## STREET v. CHAPMAN.

CHANGE OF VENUE.—APPEARANCE.—Where the court has jurisdiction of the subject matter of the action, an appearance to the action in the court to which a change of venue has been taken, by a motion to publish depositions, is a waiver of any objection to the venue.

CONTRACT—ACCEPTANCE OF.—Where a contract is signed by one only of the contracting parties, but the paper is accepted by the other party, and acts are done by him under it, he is bound by the contract.

WARRANTY.—Where an engine and boiler were contracted for, and the manufacturer bound himself "to furnish a steam boiler suitable to the engine," it was held that there was a warranty that the boiler delivered under the contract was suitable for the purpose proposed.

SAME.—MEASURE OF DAMAGES.—A contract for a steam engine stipulated that if the engine should fail to furnish power sufficient to run four pairs of burr mill stones, the manufacturer would remove it, and pay to the purchaser one thousand dollars, and it was held that the measure of damages for a failure of the engine, and the refusal of the manufacturer to remove it, was the cost of removal and one thousand dollars, and that the failure of the manufacturer to remove the engine did not remit the purchaser to his action for a breach of the warranty.

SAME.—The court below having instructed the jury that in a suit upon the warranty the purchaser would also be entitled to recover for any other materials purchased for use in connection with the engine, which were rendered worthless by reason of the defects in the engine, it was held that the damages contemplated by the instruction were too remote, and were not covered by a general warranty.

SAME.—The measure of damages upon a breach of a warranty of personal property is the difference between the actual value of the article and the

value it would have possessed if it had conformed to the warranty; the price paid being mere evidence of the latter value.

APPEAL from the *Noble* Circuit Court.

RAY, J.—This action was brought by the appellee against the appellant upon the following written contract:

" This article of agreement, made this second day of *July*, 1857, by and between *Taber, Pope & Street*, of *Salem, Ohio*, and *Charles W. Chapman*, of *Warsaw, Indiana*, witnesseth: that said *Taber, Pope & Street* agree to make and furnish said *Chapman* with one of their oscillating steam engines, with cylinder twelve inches bore and twenty-four inch stroke, with gudgeons, governor, steam gauge, safety and check valves, pumps, and all the pipes, cocks, and necessary fixtures to connect with the steam boiler, for the sum of eleven hundred and fifty dollars. Also, to furnish a steam boiler suitable to the engine, of best *Pittsburgh* iron, at nine cents per pound. Also, all the shafting, gearing and pullies to complete his flouring mill, at ten cents per pound, all delivered at the railroad station in *Warsaw* aforesaid. They also, agree to purchase for said *Chapman* three pairs of burr mill stones, all necessary bolting cloths, belting, and material of every kind to complete the said mill, on the best terms they can, without charge for commission, and forward all bills of purchase so made to said *Chapman*. Also, to engage for him a good, experienced mill-wright to do his work at said mill, and when the mill is in readiness, they agree to send their miller to put on the bolting cloths, dress the stones, and start the mill, and leave it in successful operation, so far as making a first rate article of flour. They further agree that if said engine is not of sufficient power to run four pairs of burr mill stones, and in every other way as good as the engine said *Chapman* now has, said *Taber, Pope & Street* will take it out, and pay or refund one thousand dollars, to be determined within ninety days after set in motion. That said *Chapman* agrees to pay all said bills of materials purchased by said *Taber, Pope & Street*, when they shall be due, to pay said mill-wright, and the wages and

board of a machinist to set up the engine, but no railroad expenses. Also, the railroad fare and board of the miller, but no wages. And when the mill is in operation, to pay to said *Taber, Pope & Street*, for the engine, boiler, front and grates, shafting, gearing and pullies, &c., before named, as follows, viz.: One-third part cash, and give his promissory notes, with security, for one-third part in four months' time, and notes for the balance in two equal payments, in eight and ten months respectively; all notes made payable at *Farmers' Bank, Salem, Ohio.*

" In witness whereof we have hereunto set our hands, this day and year above written.        TABER, POPE & STREET,

" C. W. CHAPMAN."

"This will certify that we, *Taber, Pope & Street*, agree to warrant the oscillating steam engine that we are building and are to put up in *Charles W. Chapman's* mill, to grind as much wheat, or do as much work, or produce as much power, with a given amount of fuel, as the average of steam engines of any kind are doing in this State or the State of *Indiana.*

" We also agree, that whereas, in our contract with said *Chapman*, we agree to furnish him with gearing at ten cents per pound, we now agree that all wheels shall be reckoned at five cents per pound instead of ten cents, and said *Chapman* shall pay for cogging all the core wheels, and we will order it done at the least expense that may be, and done in a workman-like manner.        TABER, POPE & STREET.

" *Salem, August* 20, 1857."

The action was instituted in the county of *Kosciusko*, but the venue was changed, on the application of *Street*, to the county of *Noble.* In the *Noble* Circuit Court *Street*, the appellant, moved to dismiss the cause from that court, and order the papers to be transmitted to the county of *Kosciusko*, on the ground that he had not perfected the change, but that the appellee had caused the record and papers to be filed in the county of *Noble.* This motion was

overruled, on the ground that the appellant had moved to publish a deposition in the cause in the *Noble* Circuit Court.

The issues were made up and the cause tried by a jury, who returned a general verdict for the plaintiff for four thousand five hundred and fifty dollars.

The following interrogatories were propounded to the jury at the instance of the defendant, to be by them answered in case they found a general verdict:

"1. How much did it cost to take said engine out of said mill?

"2. How much did it cost to remove said boiler out of said mill?

"3. If the plaintiff has sustained damage by reason of the boiler being defective, state what that damage was.

"4. What defects were there in the engine, and what would it have cost to make it good?

"5. On what day did *Chapman* notify the defendants to take out said engine?

"6. Did the defendants get the notice sent by *Chapman* to them, and if so, at what time did they get it?

"7. How much damage did the plaintiff sustain by the breach of the contract made in *July*?

"8. How much damage did the plaintiff sustain by the breach of the contract made in *August?*

"9. During the ninety days after the engine was put in, was any grain turned away in consequence of the inability of the mill to grind it? If so, how much?

"10. Is it shown by the evidence that during the ninety days after the engine was put in, there was more wheat or grain brought to the mill for grinding than the mill could grind; or does it appear from the evidence that more grain would have come to the mill for grinding if the mill had been capable of grinding more?"

Answers of the jury: "We, the jury, answer the interrogatories as follows:

"To the first, we answer, no evidence separately.

"To the second, we answer, no evidence separately.

"To the third, we answer, worthless, $1,440.

"To the fourth, we answer, worthless, $1,200.

"To the fifth, we answer, by letter, May 1, 1858.

"To the sixth, we answer, no evidence.

"To the seventh, we answer, $3,140.

"To the eighth, we answer, no evidence.

"To the ninth, we answer, no evidence.

"To the tenth, we answer, no evidence."

Defendant, at the proper time, objected to the jury being discharged until the interrogatories were more fully answered, but the objection was overruled, and an exception taken.

At the proper time, the defendant asked the court to give the jury certain instructions, which were refused and exceptions taken. The court also gave the following instructions, to which exception was duly taken by the defendant:

"1. If the jury believe, from the evidence, that the paper offered in evidence, signed by *Taber, Pope & Street*, on the 20th day of *August*, 1857, was delivered by them to the plaintiff, upon the consideration mentioned in the fourth paragraph of the complaint, and accepted by the plaintiff; that in pursuance of it, the plaintiff paid for the cogging of the core wheels, and performed any other act specified therein, to be by him performed, it became operative and binding upon the parties executing it, and is to be taken in connection with the prior contract between the parties of the 2d of July.

"2. By the original contract, *Taber, Pope & Street* warranted the engine by them to be manufactured to be of sufficient power to run four pairs of burr mill stones, and in every other way to be as good as the engine *Chapman* then had. They also expressly covenanted to furnish a suitable boiler of the best *Pittsburgh* iron. These covenants are equally binding upon *Taber, Pope & Street*, and by the

original contract they would be responsible for any damages that the plaintiff may have sustained by their failure to furnish a suitable boiler.

"3. The contract of the 20th of *August* provides that the oscillating engine to be furnished by *Taber, Pope & Street*, as provided by the contract of *July* 2d, shall grind as much wheat, or do as much work, or produce as much power, with a given amount of fuel, as the average of steam engines of any kind were doing at that time in the States of *Ohio* or *Indiana*. This provision, if it has become binding upon the parties by *Chapman* performing the things therein specified to be performed by him, suspends the provision in the original contract upon the same subject, that is, as to what the engine should do, and its capacity and power.

"4. If, from the evidence, you are satisfied that *Chapman* has accepted the second contract, and performed the same, on his part, in such manner as that the two writings are binding upon the parties; then, if the engine failed to work, as stated, or was deficient in power, or if the boiler was not suitable for the engine, as specified in said contract, the plaintiff will be entitled to recover in this action any damages which he may have sustained by reason of any defects in the engine and boiler, or either of them, covered by the express warranty.

"5. If the jury should find, from the evidence, that the contract of the 20th of *August* has not been made binding by the acts of the parties, as above stated, then it should be disregarded by them, and the rights of the parties must be determined by the contract of the 2d of *July* alone. In that view of the case, it becomes necessary to determine whether, or not, the clause in said contract which provides that if the engine is not of sufficient power to run four pairs of burr stones, and in every other way as good as the engine said *Chapman* now has, said '*Taber, Pope & Street* will take it out and pay or refund one thousand dollars,' limits the amount of recovery in this case. The one thou-

sand dollars are, by the express terms, limited to the engine. It does not embrace or provide any compensation for a failure, on the part of *Taber, Pope & Street*, to furnish the plaintiff with a suitable boiler, and is not therefore necessarily a limitation of the amount of recovery in this case. The true meaning of this provision is, that in case the engine fails to do as stated, or has not the power mentioned, in either case, *Taber, Pope & Street* may take out the engine and pay *Chapman* one thousand dollars; but if they fail to take it out, and throw upon him the burden of its removal, they cannot insist that in such case the one thousand dollars shall measure the damages. If they failed to take out the engine, they are liable for such damages as the plaintiff may have sustained during the period of three months, and for a reasonable time thereafter, to be allowed to *Chapman* to remove the same by reason of any defects in the engine, which are covered by the warranty that applies in the case.

"6. The plaintiff is also entitled to recover for any other material or articles purchased for, or in connection with, said engine and boiler that may have been rendered worthless by reason of any defectiveness of the engine and boiler which may be covered by the warranty that, under the rule heretofore stated, may be deemed to apply.

"7. If the plaintiff notified *Taber, Pope & Street* that the engine and fixtures were defective, and that they should take them out, and they failed to do so, the plaintiff had the right to remove them, and would be liable only for their value after they were removed, if removed with reasonable care.

"8. If the jury believe that the engine, fixtures, shafts, fly-wheel, boiler, pipes and other articles necessarily removed in taking out the engine and boiler were unfit for use, and only valuable as old iron, the real value of the same should only be deducted from the damages which the plaintiff may have proven.

"9. The stipulation in the contract of *July* 2d, on the part

of *Taber, Pope & Street*, to pay the sum of one thousand dollars in the event of the failure of the engine to perform as warranted, is not to be taken as the amount of the damages as liquidated and settled between the parties. In the event of a trifling defect, the law would not allow the plaintiff, on such ground, to recover the whole thousand dollars; and, on the other hand, the same being less than the price agreed to be paid for the engine, in the event of an entire failure, the whole sum might not be adequate compensation to the plaintiff for his loss. The stipulation is rather to be regarded as a penalty, in which case the plaintiff may recover such damages as he may be able to show himself entitled to.

"10. The stipulations of the latter contract do not change the former contract in respect to the time in which it was to be determined whether the engine was such as the contract required, and therefore the plaintiff cannot, in this case, recover any damages for wood burned in trying to run the engine after the expiration of ninety days from the time the engine was put in and put in motion, nor for any expenses incurred by the plaintiff after that time in trying to run the engine, nor for the use of the mill after a reasonable time had elapsed after the ninety days for the removal of the engine.

"11. In the event of the second contract having been accepted by the plaintiff, and performed by him, so far as the same was to be performed on his part, the two papers are to be taken together, so as to constitute an entirety, and the contract thus constituted by the two papers containing an express warranty, there can be none implied by law, and hence there can be no warranty in this case, except the express one contained in the written contract. The warranty contained in the written contract is confined to the engine and boiler, and does not extend to any of the machinery or fixtures; and it follows that the jury can only allow such damages as have grown out of a breach of the warranty of the engine and boiler, and not for

any breach of any supposed implied warranty of engine or boiler.

"12. The stipulations contained in both, or either, of the first and second contracts, amount to a warranty, and exclude any warranty that might otherwise have been implied by law. Hence the jury can only give damages caused by the breach of the warranty of the engine and boiler, and nothing can be allowed for the breach of an implied warranty.

"13. But if the plaintiff duly mailed, within or at the expiration of ninety days, in the post office at *Warsaw*, the notice in writing read in evidence, directed to *Taber, Pope & Street*, at their place of business, in *Salem, Ohio*, that would be *prima facie* sufficient to show notice, unless the presumption of service of notice thus raised is overthrown by evidence of the non-receipt of such notice by the defendant or any of his co-contractors; and in case of such presumption being thus overthrown, the fact of service of notice by mail will remain unproved. Notice might also have been given verbally, and if one of the co-contractors of the defendant did receive such notice during or at the expiration of said ninety days, that would be sufficient.

"14. If you believe, from the evidence, that the plaintiff is, under the rule stated, entitled to recover, the measure of damages will be the difference between the amount paid, or contracted by *Chapman* to be paid, for the property purchased, and its actual value, together with any diminution of profits in the way of earnings, over and above all necessary expenses caused by the use of the engine and boiler furnished by the defendant and his co-contractors, as compared with such other ordinary engines and boilers as were at the time in use. If the circumstances are shown to be such as that the second contract will be effective under the principle before stated, the comparison, so far as the engine is concerned, will be with the average of ordinary engines then in use in the States of *Ohio* and *Indiana*. To the items named may be added the reasonable expenses of removing the

engine and boiler from the mill, and the setting up of others in their place; damages for the loss of earnings are to be confined to the ninety days, and such reasonable time thereafter as might be necessary to remove the machinery named and set up another engine and boiler in its place.

The jury having come into court for further instructions, the court gave, in presence of the parties, the following:

"15. The sum of one thousand dollars mentioned in the paper of *July*, 1857, is not a penalty, the amount of which can be recovered in gross, but in case you find for the plaintiff, and assess damages in his favor, the amount is to be made from what he is shown, by the evidence, to have sustained, whether that amount is more or less than one thousand dollars; and if the evidence shows he has sustained less than one thousand dollars, that is the amount he will be entitled to, or, if it shows that he has sustained more than that, then he is entitled to recover more. In other words, the one thousand dollars is not to be regarded as a penalty or forfeiture."

To the giving of which charges and each of them, the defendant excepted, at the time, and asked the court to sign and seal his bill of exceptions, and make the same a part of the record, which was done accordingly.

The defendant, at the proper time, moved the court for judgment in his favor upon the special findings of the jury. This motion was overruled, and, over his exception, judgment was rendered for the plaintiff for the sum named in the general verdict.

The first objection is to the action of the court in overruling the motion to dismiss the cause, and order the papers on file to be returned to the *Kosciusko* Circuit Court.

This motion came too late. The court had jurisdiction of the subject-matter of the suit, and the appearance of the defendant in that court, and his motion to publish depositions, gave the court jurisdiction of his person. The court

assumed jurisdiction of the cause in acting upon that motion.

It is insisted by the appellant that the acceptance by the appellee of the paper containing the proposition of *August* 20, 1857, and the doing of acts which the appellee was bound to do under the terms of that offer, and was not bound to do by his first contract, does not amount to a consent to the new contract. We think otherwise. An acceptance of the paper, and the doing of an affirmative act, as provided for in the contract, bound the appellee. This view is not in conflict with the cases cited of *Johnston et al.* v. *Fessler*, 7 Watts 48, and *Ball* v. *Newton*, 7 Cush. 599. In the former case, the offer was to do either of two things, and the act done subsequently by the other party did not indicate which offer he intended to accept, nor, indeed, was the act necessarily done in consequence of the proposition.

The latter case was where services were performed without any knowledge of an offer to pay for them. Of course there could be no acceptance of a promise where the party was not informed of the offer.

The only portion of the second charge given by the court which went to the question of damages, or could have any influence upon the finding of the jury, is that in regard to the boiler. We see no error in this part of the instruction. The contract to "furnish a steam boiler suitable to the engine," and a delivery under that contract of a boiler, amounted to a warranty that it was suitable for the purpose proposed. *Jones* v. *Bright et al.*, 5 Bingham, 533.

No objection is taken in argument to the third charge. To the fourth charge it is objected that it assumes that the contract contained a warranty of the boiler. This we have already held correct.

The fifth charge is erroneous. The contract is, that if the engine fails to run four pairs of burr stones, the appellant will remove it and pay the appellee one thousand dollars. The removal of the engine and the payment of the money is the limit to the liability for the failure of the engine.

The neglect of appellant to comply with his agreement and remove the engine, or pay the money stipulated, did not remit the appellee to his action for a breach of the warranty, but simply authorized a recovery for the expense incurred in making such removal, and a judgment for the money contracted to be paid.

The damages contemplated in the sixth instruction are entirely too remote, and would not be covered by a general warranty. From what has been already said in regard to the fifth charge, it will follow that, in our opinion, the ninth and fifteenth charges were not correct.

The fourteenth instruction does not correctly state the rule as to the measure of relief for breach of a warranty. The law is now well settled, that the rule is the difference between the actual value and the value that the article would have possessed if it had conformed to the warranty, the price paid being mere evidence of that value. Sedg. on Dam. 287. As in this case the price paid was the only evidence of value, the instruction could not, perhaps, have misled the jury. The answer of the jury to the special interrogatories relieves us from the discussion of that part of the instruction in regard to profits.

The judgment is reversed, with costs, and the cause remanded for a new trial.

Frazer, C. J., having been of counsel below, was absent.

*J. L. Worden, J. E. McDonald, A. L. Roache* and *D. Sheeks*, for appellant.

*J. Morris*, for appellee.