TETER *v.* SHULTZ ET AL.

[No. 16,789. Filed March 4, 1942.]

542

*Donald R. Mote,* of North Manchester, for appellant.

*Russell J. Wildman* and *Oscar R. Brown,* both of Peru, for appellees.

BLESSING, J.—This action was begun by the appellant to collect the balance due on a note of $860, and to foreclose a chattel mortgage securing said note, both of which instruments were signed by all of the appellees. To appellant's complaint the appellees filed an answer of general denial and a second paragraph alleging total failure of consideration, partial failure of consideration, breach of implied warranty, breach of express warranty, and violation of plaintiff's guaranty. The appellees also filed a counterclaim in which they alleged that the note sued on was given for the purchase price of certain chattels, and charged that appellant had breached a warranty of the goods sold and demanded damages, including special damages pleaded, in the sum of $1500. The case was tried before the court without the intervention of a jury and the court found against the appellant on his complaint and for the appellees upon their counterclaim and entered judgment in favor of appellees in the sum of $300.

A motion for new trial was filed by the appellant, which was overruled, and this ruling is assigned as error in this court. The specifications in the motion for new trial relied upon are:

1. That the decision of the court is not sustained by sufficient evidence and is contrary to law.

2. For error in the assessment of the amount of recovery, the recovery by the appellees being too large.

3. For error in the assessment of the amount of recovery by the plaintiff, the recovery being too small— that is, there was no recovery on the complaint.

The record discloses that on the 17th day of June, 1939, the appellee Dudley E. Shultz purchased from the appellant ten head of dairy cows for the consideration of $850, and executed his note and the mortgage sued upon for the purchase price of said cows and a trucking bill of $10. The appellees David D. Shultz and Sadie I. Shultz are the parents of the appellee Dudley E. Shultz and they signed the note and mortgage as sureties. The mortgage covered not only the cows purchased from appellant by the said Dudley E. Shultz but also ten cows and other property owned by said sureties. The cows purchased from appellant were taken to the farm of David D. Shultz and there intermingled with the dairy herd owned by said sureties. At the time of the purchase of said cows, it was agreed by the appellant and the appellees that one-half of the milk check from all of the mortgaged cows and the proceeds from the sale of the calves from the cows purchased from the appellant should be applied to the purchase price.

Within two to four weeks after the purchase of said cows, one of them became sick; and it was noticed that she had a festered udder. Within a short time after this situation arose, another of the cows went bad; and it was finally determined that the cows purchased

from appellant were infected with a disease known as garget; and this infection spread throughout the entire herd, including the cows owned by David D. and Sadie I. Shultz. There is evidence to the effect that when the infection manifested itself the cows so infected gave ropey and stringy milk; that it soured before it could be sold; and that the quantity which the cows first gave greatly decreased. Appellees contend, and this is the basis for their counterclaim, that at the time the cows were purchased the appellant expressly warranted said cows to be first class dairy cows and that they would each produce six gallons per day. The appellee David Shultz, in support of the above claim, testified as follows: "He (Teter) said these cows would have to be as he recommended them; first class dairy milk cows and six gallons a day they would give." It is further contended by the appellees that there was a promise upon the part of appellant to accept the return of any cow that went bad. Dudley E. Shultz testified as follows: "He (Teter) said whenever a cow was bad all I had to do was to notify him and he would come and get the cow or have me bring her back." When the cows began to give ropey and stringly milk and the milk became unmarketable, an investigation was begun to determine the cause. The barn and dairy implements were examined by agents of the creamery purchasing the milk, and it was finally suggested that it might be due to the condition of the cows. It was then that the cow that had a festered udder was discovered, and upon this discovery the appellant was notified both by mail and by word of mouth concerning the condition of some of the cows. Appellant finally came to the Shultz farm, and there were several return visits throughout the fall months and into December of 1939. In December,

he told the purchaser of the cows that they were suffering from garget, that he had had experience with it, and that the thing to do was to feed them saltpeter. He prescribed the amount to be fed. Following the administration of the treatment, the milk cleared up for a time but there was no cure effected; and when the saltpeter was not fed, the cows continued to give ropey and stringy milk and the same soured and was unmarketable. In February of 1940, a veterinarian was called in; and, after an examination, he diagnosed the disease as that of garget, disclosed that it was infectious and that it would probably go through the entire herd. During the visits of the appellant to the Shultz farm, effort was made to secure an adjustment from the appellant but he refused to make any settlement. He insisted upon the payment of the mortgage and said that if the purchaser would pay the indebtedness that he would make the cows right. The appellee Dudley E. Shultz refused to pay the mortgage, and upon the 10th day of March, 1940, loaded the ten cows into a truck and returned them to the farm of the appellant. At this time, the note and mortgage were past due. After feeding the cows so returned for a period of approximately thirty days, he advertised said cows for sale pursuant to the terms of the mortgage, sent a copy of the notice of sale to the appellees, and upon the day fixed sold said cows at public outcry for the sum of $450, and credited said sum on appellant's note, after which he brought this suit to collect the balance.

The first contention of the appellant is that the decision of the court is not sustained by sufficient evidence and is contrary to law because the evidence fails to disclose any warranty on the part of the appellant and that the cattle were not diseased

at the time of the sale. It is provided by the Uniform Sales Act of this State, that any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. § 58-112, Burns' 1933.

The testimony hereinbefore set out, with reference to taking back any cow that went wrong, was a promise upon the part of the seller relating to the goods which would tend to induce the buyer to purchase the same; and the statement of the appellant, that "these cows would have to be as he recommended them, first class dairy milk cows and six gallons a day they would give," was an affirmation of fact by the seller relating to the goods within the meaning of the statutory provision above set out. It was not a statement of value nor was it merely a statement of the seller's opinion. In view of the statutory provisions above referred to, there was sufficient evidence from which the trial court could find that there was an express warranty on the part of the appellant in the sale of said cows.

Respecting the contention that the evidence fails to disclose that the cows were afflicted with the disease of garget at the time of the purchase, the record discloses that this infectious disease had never appeared in the herd of David D. Shultz and Sadie I. Shultz, and that their cows had never produced ropey or stringy milk. The evidence further discloses that some two or three weeks prior to June 17th, a brother-in-law of Dudley E. Shultz purchased some dairy cows from the appellant and that they were infected with the disease of garget which made them unfit

for dairy purposes. Dr. J. E. Randall, the veterinarian who examined the cattle in February of 1940, testified concerning said disease; and, in answer to a hypothetical question propounded to him, gave as his opinion that the Shultz cows were infected with garget on the day of their purchase; and further testified that when the cows were fed saltpeter it would not be possible to detect garget without analyzing the milk. The opinion expressed by Dr. Randall was in conflict with testimony produced by the appellant, but with this conflict we are not concerned. The weight of the testimony was for the trial court. Considering the evidence most favorable to the appellees, it cannot be said as a matter of law that the cattle were not afflicted with garget at the time of the purchase; and we think there was sufficient evidence upon which the trial court could base its conclusion that the cattle were so afflicted when sold and delivered to the appellee Dudley E. Shultz.

Appellant also argues that the appellees are not entitled to recover in this cause by reason of the fact that Dudley E. Shultz inspected the cattle before they were bought and milked some of the cows at the request of the appellant in order that he might be satisfied with his purchase. With this contention, we cannot agree. Where a seller expressly warrants the property sold, as was done here, and the goods are received, the purchaser may rely on the warranty of the seller although he had the opportunity of inspecting the goods before accepting them. *Hitz* v. *Warner* (1911), 47 Ind. App. 612, 93 N. E. 1005; *McCarty* v. *Williams* (1915), 58 Ind. App. 440, 108 N. E. 370.

Appellant next contends, that there was no disaffirmance of the sale in this instance for the reason that

the appellees failed to notify the seller, within a reasonable time, of an election to rescind. If appellees were bound to make their case upon the theory of disaffirmance and a rescission of the contract of purchase, we would be required to determine whether there was a return of the property within a reasonable time under all the circumstances as disclosed by the evidence in this cause; but we are of the opinion, from the pleadings and the evidence, that the appellees were not confined to the theory of rescission. While it is true that the counterclaim of appellees alleged a disaffirmance, a return of the cows, and a demand for the return of the consideration paid, it is also true that the counterclaim alleges that if the cows had been as warranted they would have been worth $850 or $85 per head, but that said cattle were actually worth but $50. On the trial of the cause, evidence was admitted, without objection by the appellant, establishing the value of the cows so purchased at $85 per head if they had been as warranted, but in their diseased condition the value was shown to be only the sum of $350 or $35 per head. The counterclaim also charged special damages as the proximate result of the breach of warranty and asked for judgment in behalf of appellees in the sum of $1,500. From the evidence offered and received by the court, it would appear that in so far as the counterclaim was concerned the case was tried upon the theory that the counterclaim charged a breach of warranty and damages resulting therefrom, measured by the difference between the actual value of the cows and their value had they answered to the warranty. Special damages if pleaded and proven are recoverable whether the theory of the pleading is for the recovery of damages or for rescission. Having determined the theory upon which the trial court tried the issues raised by the

counterclaim and a general denial thereto, this court is bound upon appeal by the theory upon which the case was tried by the trial court. *Pitcairn* v. *Honn* (1941), 109 Ind. App. 428, 32 N. E. (2d) 733; *Diddel* v. *American Security Co.* (1932), 94 Ind. App. 639, 161 N. E. 689.

The next contention made by the appellant is that the court erred in the assessment of recovery awarded appellees, in that the recovery is too great. The evidence discloses that because of the breach of warranty as to the quality of the cows, the purchaser was entitled to recover as damages the sum of $510, this being the difference between the actual value of the cows and the value of the cows if they had conformed to the warranty. This amount the purchaser would be entitled to have set off against any amount found due and owing on the original purchase price. There was paid and credited on the original obligation of $860, the sum of $201.92. The cows purchased from appellant and covered by the mortgage were returned to the mortgagee and by him sold and the proceeds of the sale in the sum of $450 were applied upon the original mortgage debt. This left a balance due and owing on the original obligation the sum of $208.08, which amount the seller was entitled to have deducted from the damages in the sum of $510 accruing because of the breach of warranty. When this amount is credited, the seller was still obligated to pay the buyer a sum slightly in excess of $300, which was the amount of the judgment. This calculation omits any item of interest; but should such item require any consideration, the special damages proven are more than sufficient to cover any interest to which the appellant was entitled.

Finding no reversible error, the judgment of the lower court is hereby affirmed.

NOTE.—Reported in 39 N. E. (2d) 802.