WEDDLE *v.* I. R. C. & D. WAREHOUSE CORP.

[No. 17,805.  Filed April 28, 1949.
Rehearing denied October 5, 1949.]

*Bingham, Cook & Spilman,* of Indianapolis; *Scotten & Hinshaw, of* Newcastle; *Livengood & Livengood;* and *Orlando F. Ingle,* all of Richmond, for appellant.

*James H. Ronald;* and *Vioni & Vioni,* all of Richmond; and *Brown & Edwards,* of New Castle, for appellee.

CRUMPACKER, C. J.—On November 12, 1945, at approximately 8 o'clock in the evening, a collision occurred between two motor vehicles on U. S. Highway 35 about eight miles northwest of the city of Richmond, Indiana. The vehicles involved were a large tractor-trailer trucking outfit owned .and operated by the appellee, who is a common carrier of freight over certain highways in the state of Indiana, and a light pick-up truck owned and operated by the appellant. There were no personal injuries resulting from the accident but both vehicles involved were badly damaged. Conceiving that the appellant's negligence was the sole proximate cause of the collision, the appellee brought this suit in which it sought to recover damages to said tractor-trailer and special damages occasioned by the loss of its use. Feeling himself free from negligence and believing that the fault was entirely that of the appellee, the appellant filed a counter-claim to recover damages to said pick-up truck. The case was submitted to the Henry Circuit Court for trial without the intervention of a jury and resulted in a general finding for the appellee on its complaint and against the appellant on his counter-claim. The appellee's damages were assessed at $8,015.50 and judg-

ment went accordingly. We are asked to reverse such judgment because (1) the evidence fails to establish negligence on the part of the appellant; (2) even though the appellant were negligent, the record discloses contributory negligence as a matter of law; (3) the damages assessed by the court are excessive; and (4) the court erred in admitting certain evidence over the appellant's objections.

The solution of the first two questions requires an examination of the facts. The accident happened after dark on a straight and level stretch of concrete pavement 25 feet wide, running from the northwest to the southeast, and divided by a center stripe into two traffic lanes of equal width. About 380 feet northwest of the point of the accident the highway begins a long sweeping curve to the south and enters an up-grade of about 2%. Approximately 180 feet southeast of the point of the accident said highway enters another slight up-grade and gradually curves to the south. On the night of March 12, 1945, a passenger car, belonging to one Welling and traveling southeast toward Richmond, became stalled on the short stretch of pavement between the two curves and grades above mentioned. It was pushed onto the berm on the south or right hand side of the pavement and there it remained. The appellant, who operates a fillng station in Richmond, agreed to tow the Welling car into that city for repairs and in attempting to do so used a small pick-up truck driven by his son Howard Jr., a youth 18 years of age. As Howard Jr. reached the Welling car he turned his truck around, headed it toward Richmond and then backed off the pavement onto the berm immediately in front of said car. Preparatory to attaching a tow chain, he shut off his motor and turned out his lights. After making the connection he got back in his truck but the

battery therein was too weak to turn the motor over and it refused to start. Thereupon he and said Welling pushed the truck onto the pavement and along the south lane thereof toward Richmond. By putting the gears in mesh while the truck was in motion the motor turned over and started. Howard Jr. thereupon turned on his lights and again backed off the pavement in front of the Welling car but on this occasion he left his lights on and his motor running. He got out of his truck and hooked the tow chain to the Welling car but as he was about to get back in the truck the motor died and the lights went out. He and Welling again tried to start the motor by pushing the truck along the highway toward Richmond. They reached that point in the highway where the up-grade begins and, the motor still refusing to start, they concluded to push the truck backwards. This also failed to produce results and they had just got the truck back to the Welling car when the appellee's tractor-trailer, traveling toward Richmond at 40 to 45 miles per hour and carrying a cargo of 10,786 lbs., came around the curve in the highway to the northwest of where the appellant's truck stood and bore directly down upon it. Said tractor-trailer was equipped with lights and brakes which met the standards required by law and the speed at which it was traveling was not in excess ·of the maximum prescribed by law. The tractor-trailer's headlights did not reveal the presence of the appellant's truck on the highway ahead until it came out of the curve and then for the first time the appellee's driver saw said truck in his path some 380 feet away. He applied his brakes immediately and attempted to bear to the left. Nevertheless he struck the left rear end of said truck, careened off the highway to the north, through a guard rail and into a ditch where the whole outfit overturned. During all the time that Howard Jr. and Welling

were pushing the appellant's truck back and forth on the highway, a period of 15 or 20 minutes, they were in possession of red flares or fuzees which they did not see fit to use. On facts so arrayed we cannot say that freedom from negligence on the part of the appellant or contributory negligence on the part of the appellee appears as a matter of law. Both questions are clearly questions of fact and the court's determination thereof is conclusive.

Whether or not the evidence justifies an assessment of damages in the sum of $8,015.50 is a serious question. When we break down such damages in the light of the undisputed evidence we find its constituent elements to be as follows: (1) the difference in the fair cash value of the tractor immediately before and after the accident, $1,900; (2) the difference in the fair cash value of the trailer immediately before and after the accident, $1,400; (3) the cost of getting the outfit out of the ditch and into appellee's terminal at Richmond, $67.50; and (4) the loss of use of the equipment while under repairs, $4,648. There can be no question concerning the first three items. They are proper elements of damage and were properly proven.

In proof of the fourth element of damage the appellee's general manager was permitted to testify that the "value of loss of the use" of the tractor was $50 per day and that of the trailer, $30 per day. The witness had no personal knowledge concerning the matter and testified solely from his recollection as to what the appellee's books showed such loss to be.

As early as 1853 our Supreme Court recognized loss of use, in this type of litigation, as a proper element of damage and such has been the law of this state ever since. *The Shelbyville Lateral Branch Railroad Co.* v. *Lewark* (1853), 4 Ind. 471; *The City*

*of Terre Haute* v. *Hudnut* (1887), 112 Ind. 542, 13 N. E. 686; *New York Central R. Co.* v. *Reidenbach* (1919), 71 Ind. App. 390, 125 N. E. 55; *Maddox* v. *Yocum* (1944), 114 Ind. App. 390, 52 N. E. 2d 636. Such also seems to be the rule prevailing in the great majority of the states. 25 C.J.S., Damages, § 41 and Note 77; 15 Am. Jur., Damages, § 129. The appellant concedes this but insists that the damage suffered through loss of use is measured by the rental value of the property damaged for the time reasonably necessary to make repairs. As far as the present case is concerned we think the appellant's contention has merit although generally speaking such measure of damages for loss of use is too narrow. The rule in Indiana is announced in *Fisher* v. *Carey* (1918), 67 Ind. App. 438; 119 N. E. 376, as follows: "It has been held that, in cases involving the deprivation of the use of property, the damage is its rental value, if it has a rental value, but, if not, then the value of its use to the injured party for the time he was deprived of its use is the measure of damages." Considering the same subject in *Maddox* v. *Yocum, supra,* we said: "It is also the rule that the proper measure of damages because of deprivation of the use of property is the value of such use. . . . This is ordinarily measured by the property's fair rental value." In that case, however, we recognized loss of profits, when ascertainable to a reasonable degree of certainty, as an alternative measure of damages for loss of use.

In the case before us there is no evidence whatever as to the rental value of the appellee's tractor-trailer nor is there any evidence that it had none. Under such circumstances proof of the value of loss of use by the method chosen was improper and even though the question of its competency may not have been properly saved, we consider the evidence, though in the record, of no

probative value because of the lack of knowledge on the part of the sole witness who testified on the subject. Furthermore the record is silent on the question of loss of reasonably certain net profits. It is true that evidence of that character was excluded at the instance of the appellant but no cross-error is assigned and the fact remains that there is no such evidence in the record. We are constrained to hold that the court's assessment of damages including, as it does, $4,648 for loss of use, is excessive to that extent.

The admission of evidence to which the appellant objected below and complains of here concerns the question of special damages and therefore requires no further comment.

The judgment is affirmed in all things except as to the assessment of damages for loss of use. The cause is remanded and under the authority of Rule 1-8 the court is instructed to open the judgment and take additional testimony on the question of loss of use, make its findings in accordance with the preponderance thereof and render appropriate judgment.

NOTE.—Reported in 85 N. E. 2d 501.