JERRY ALDERMAN FORD SALES, INC. *v.* MARY LOU BAILEY ET AL.

[No. 871A148. Filed December 27, 1972. Rehearing denied April 5, 1973. Transfer denied July 16, 1973.]

---

2. *Salazar* v. *Senior* (1972), 151 Ind. App. 144, 278 N.E.2d 332, 337, 29 Ind. Dec. 183, 191.

*Henry J. Price, Jon D. Noland, Barnes, Hickam, Pantzer & Boyd,* of Indianapolis, for appellant.

*John A. Young, Thomas P. Ledgerwood, Rocap, Rocap, Reese & Young,* of Indianapolis, for appellee Bailey; *James C. Clark, Clark & Clark,* of Indianapolis, for appellee Central Indiana Truck Equipment Corp.

SULLIVAN, J.—This appeal involves judgments in amounts of $52,500 and $477.72 in favor of Mrs. Bailey (plaintiff-appellee) and Central Indiana Truck Equipment Corp. (Central) (defendant-appellee), respectively, against Jerry Alderman Ford Sales, Inc. (Alderman) (defendant-appellant).[1] The case arose out of the sale by Alderman of a 1967

---

1. Alderman's appeal as to the judgment in favor of Central is wholly dependent upon the validity of Alderman's arguments as to Bailey's judgment.

Ford triaxle dump truck to Mrs. Bailey and subsequent repairs made to said truck by Central.

Mrs. Bailey alleged in her original complaint that following repeated steering difficulty, she delivered her truck to Alderman for repairs; that Alderman delivered the truck to Central for the repairs; that after the repairs were made both Alderman and Central refused to deliver the truck to Mrs. Bailey; that as a result Mrs. Bailey lost the use of the truck and suffered lost income in the amount of $6500; that because of the aggravated circumstances Mrs. Bailey was entitled, in addition to actual damages, $50,000 punitive damages.

Central filed a cross-complaint against Mrs. Bailey and Alderman for $477.72, the value of repairs to the truck, and further cross-claimed against Alderman for any sums adjudged against it in Mrs. Bailey's favor. Alderman, in turn, cross-claimed against Central for all sums that might be adjudged against it in favor of Mrs. Bailey.

One day prior to trial Mrs. Bailey moved to amend her complaint to increase her actual damage figure from $6500 to $35,000. Alderman opposed this with a motion for continuance. The trial court did not rule on the motion to amend until the parties at trial had rested, at which time the motion was sustained. The jury returned a verdict for Mrs. Bailey and against Alderman for $35,000 actual damages and $17,500 punitive damages and $477.72 for Central on its cross-complaint against Alderman.

## EVIDENCE OF MALICE OR OPPRESSIVE CONDUCT NOT PRECLUDED BY FAILURE TO PLEAD FRAUD WITH SPECIFICITY

The principal thrust of appellant's argument involves an interpretation of Indiana Rule TR. 9 (B) which reads as follows:

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be specifically averred.

Malice, intent, knowledge, and other conditions of mind may be averred generally."

It is Alderman's contention that because fraud was not specifically pleaded as required by TR. 9 (B), it was error for the trial court to permit Mrs. Bailey to introduce evidence of "alleged fraud" in the sale of the truck. The main question before us is whether the lawsuit below sounded in "fraud" as contemplated by said Rule or whether it merely involved circumstances of malice or oppressive conduct so as to fall outside the "specificity" requirements of the Rule.

Mrs. Bailey's complaint insofar as pertinent to the Rule 9 (B) issue alleged:

"2. That the defendants, and each of them, in failing to return said truck to its owner after demand being made were guilty of negligence, malice and oppressive conduct toward the plaintiff.
"3. That because of the aggravated circumstances the plaintiff is entitled to exemplary damages from the defendants, and each of them, in the amount of Fifty Thousand ($50,000.00) Dollars."

It is Bailey's vigorous contention that the evidence of record, which Alderman claims constitutes a change in the theory of the action to one of "fraud", is evidence which merely shows appellant's malice and oppressive conduct so as to entitle her to punitive damages.

Although the case of *Murphy Auto Sales, Inc.* v. *Coomer* (1953), 123 Ind. App. 717, 718, 112 N.E.2d 589 does in fact involve allegations of fraud as opposed to some other conduct of a tortious nature done with malice or an oppressive state of mind, the opinion does set forth the relevant law of Indiana concerning the conditions under which punitive damages may be awarded:

"Punitive or exemplary damages do not rest upon any ground of abstract or theoretical justice but upon the basis of an established public policy which seeks to promote the public safety and to punish through the medium of a civil proceeding a fraudulent wrong-

doer, and where malice, gross fraud and oppressive conduct is shown punitive damages are allowable to deter other wrongdoers from offending in a like manner."

It may be observed that it is quite possible for a single act to constitute not only actionable fraud, *if such fraud were alleged,* but to constitute as well, evidence of a malicious or fraudulent state of mind on the part of defendant so as to authorize the award to plaintiff of punitive damages pursuant to a complaint for contract rescission and damages *(Murphy Auto Sales, Inc., supra)* or as here, a complaint for damages for conversion or for breach of a contract of bailment. The pleader retains certain options and alternatives in such situations for as noted in *Murphy Auto Sales, Inc., supra,* quoting from 25 *C.J.S., Damages* § 120:

"Where the acts constituting a breach of contract also amount to a cause of action in tort, there may be a recovery of exemplary damages upon proper allegations and proof. As sometimes stated, exemplary damages are recoverable for a tort committed in connection with, but independently of, the breach of contract, where the essentials of an award of such damages are otherwise present, the allowance of such damages being for the tort and not for the breach of contract. In order to permit a recovery, however, the breach must be attended by some intentional wrong, insult, abuse, or gross negligence which amounts to an independent tort."

Compare *Standard Land Corporation of Ind.* v. *Bogardus* (1972), 154 Ind. App. 283, 289 N.E.2d 803, decided by the First District.

It must also be noted that an act committed with a fraudulent state of mind may be such as to subject the actor to liability for punitive damages yet such act may not constitute actionable fraud. In other words "fraud" which under Rule 9(B) must be specifically alleged contains many more essential elements than the state of mind described by the words "with fraudulent intent" *(E. I. Du-*

*Pont DeNemours & Co.* v. *Dupont Textile Mills, Inc.,* (M.D. Pa. 1939) 26 F. Supp. 236) or "willful and malicious misrepresentations" (*Nagel* v. *Prescott & Co.* (N.D. Ohio 1964) 36 FRD 445), or as here "malice and oppressive conduct toward plaintiff". See *Love* v. *Comml. Casualty Ins. Co.* (S.D. Miss. 1939) 26 F. Supp. 481). Quite obviously, the last such allegations fall short of alleging actionable fraud. In the case before us the allegation is very simply that the conduct of defendants with respect to the denial to plaintiff of her truck was malicious and oppressive. Such allegation is clearly one of a state of mind, and is sufficient in its generality.

Our analysis derives support from a principal treatise on Federal Procedure.[2]

> "The rule recognizes that any attempt to require specificity in pleading a condition of mind would be unworkable and undesirable. It would be unworkable because of the difficulty inherent in describing a state of mind with exactitude and because of the complexity and prolixity that any attempt to support these averments by setting forth all the evidence on which they are based would introduce into the pleadings. Moreover, a rigid rule requiring the pleading of a condition of mind would be undesirable because, absent overriding considerations pressing for a specificity requirement, as in the case of averments of fraud or mistake, the general "short and plain statement of the claim" mandate in Rule 8 (a) should control.

> "It might be argued that the second sentence in Rule 9 (b) is unnecessary, since it merely restates the content of Rule 8 (a) (2). However, its placement in Rule 9 (b) suggests that the draftsmen felt a need to qualify the first sentence of the rule and thus insure that the latter was not interpreted to require a party pleading fraud or mistake to allege specifically the circumstances from which fraudulent intention, knowledge of the falsity of a statement, or mistaken belief in its truth could be inferred.

> "The second sentence in Rule 9 (b) also has had significance in another context. *When the malice of a person is in issue, a general averment will suffice, even when it is an element of* plaintiff's cause of action or his claim for punitive dam-

---

2. Indiana Trial Rule 9 (B) is identical to Federal Rule 9 (b).

ages." (Emphasis supplied) 5 *Wright and Miller, Federal Practice and Procedure* § 1301, p. 426, 427.

We accordingly hold that the evidence of "fraud", i.e., evidence tending to show a malicious state of mind, was not erroneously admitted.

## REFUSAL OF INSTRUCTION NEGATIVING RECOVERY FOR FRAUD NOT IMPROPER

In a related argument, Alderman alleges error in the refusal of the court to instruct the jury as follows:

> "You are instructed that the issue for you to resolve relates to the placement and moving of the third axle and all the circumstances surrounding this moving of the axle and damages caused by the way this was done, if any.
> "Plaintiff may not recover any damages in this action based upon the *alleged fraud or misrepresentation* in the original sale and purchase of the truck by Plaintiff from Jerry Alderman Ford Sales, Inc." (Emphasis supplied)

As hereinbefore noted, plaintiff Bailey did not allege "fraud" or "misrepresentation" in her complaint. The instruction therefore as it purports to relate to the issues framed by the pleadings is wholly inapplicable to the case at bar. Furthermore, to the extent that there was evidence of record concerning a malicious state of mind or spirit of oppressiveness on the part of Alderman's agents, exemplary or punitive damages would be recoverable by plaintiff. To that extent, the requested instruction is an erroneous statement of law, and refusal of the instruction was therefore proper.

## PAROLE EVIDENCE RULE NOT VIOLATED

The foregoing discussion is likewise determinative of Alderman's contention that the court erred in admitting certain oral testimony relating to the sales negotiations for the truck, and other statements or representations made prior to the

execution of the sales contract. In short, such evidence was not, as asserted by Alderman, an attempt to controvert the "complete and exclusive final statement of the terms of the agreement" as reflected by the written contract in violation of the parole evidence rule. Rather, such evidence for the most part related to the state of mind of defendant during its dealings with plaintiff and thus concerned plaintiff's claim for punitive damages.[3]

Its admission was therefore not improper.

## EXISTENCE OF IMPLIED WARRANTY OF FITNESS

Quite separate and apart from Alderman's allegations concerning the admissibility of evidence with respect to various representations made by the dealer's agent during pre-sale dealings and negotiations and whether such evidence unfairly changed the theory of plaintiff's action to one of fraud, as hereinbefore discussed, is Alderman's assertion that there was no issue of implied warranty properly before the jury. To be sure, the complaint does not allege a breach of implied warranty. Yet from the evidence of record, reasonable men could readily find such implied warranty of fitness to be present here, and the complaint may be deemed amended to conform to such evidence. *General Outdoor Advertising Co.* v. *LaSalle Realty Corp.* (1966), 141 Ind. App. 247, 218 N.E.2d 141. See also *Water Works & Industrial Supply Co.* v. *Wilburn* (1968 Ky. Ct. of App.), 437 S.W. 2d 951.

We must note that there was no objection to plaintiff's evidence concerning notification to Alderman of the specific purpose for which the truck was to be used, i.e., hauling white rock and gravel. We cannot say, therefore, as a matter of

---

3. There was certain of this evidence adduced with respect to the sales negotiations and conversations prior to execution of the contract which is hereinafter discussed relative to an implied warranty of fitness for a particular purpose. Such aspect of the evidence however does not bear upon its admissibility in possible contravention of the written contract as alleged by Alderman.

law, that the jury could not reasonably find that Alderman impliedly warranted the truck for the purpose of hauling stone and gravel

Appellant Alderman asserts additional error in the proceedings below, which assertions require discussion.

## DEFENDANT NOT ENTITLED TO CONTINUANCE UPON FILING OF MOTION BY PLAINTIFF TO INCREASE PRAYER FOR COMPENSATORY DAMAGES

Alderman contends that the court erred in refusing a continuance when plaintiff Bailey, on the day preceding trial, filed a motion to amend her prayer for compensatory damages from $6500 to $35,000. The trial court initially reserved ruling upon Bailey's Motion to Amend but after all parties had rested, sustained same, permitting the amendment.

Alderman analogizes our factual situation to that in *Meredith* v. *Lackey* (1860), 14 Ind. 529 wherein the court held that a continuance should have been granted upon the filing of "a separate and distinct demand not embraced in the original complaint." The *Meredith* case is inapplicable. Bailey's amendment here did not bear upon the theory of the complaint. It added nothing to the issues triable except with respect to the amount of compensatory damages she believed herself entitled as a result of the theretofore alleged acts and conduct of defendant Alderman. In this connection, it is well established that the allegations of a complaint cannot be changed or expanded by the prayer for relief. *Board of Commissioners of LaGrange County* v. *Cutler* (1855), 7 Ind. 6. As stated in *Richey* v. *Richey* (1958), 128 Ind. App. 503, 509, 149 N.E.2d 126:

"It is well settled in this jurisdiction that the prayer of a complaint does not determine its character or theory. It is the substantial facts that are controlling."

In Indiana a plaintiff is entitled only to such relief as the evidence will support, and plaintiff's burden of proof upon the issues framed is unchanged by an increase in the amount of damages requested. Thus as in the related situation presented in *Hancock* v. *York* (1967), 141 Ind. App. 212, 227 N.E.2d 187, we hold that appellant's Motion for Continuance was addressed to the sound discretion of the trial court and we do not believe that appellant-Alderman was in any way prejudiced by such amendment. Alderman did not make such a "showing of good cause" as to require the granting of a continuance pursuant to Trial Rule 53.4.

## REFUSAL OF DEFENDANT'S TENDERED INSTRUCTION CONCERNING DAMAGES NOT CAUSE FOR REVERSAL

Alderman further asserts as error the refusal of its tendered Instruction #5 which reads as follows:

"Consequential damages include any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by Plaintiff. If you find that Plaintiff reasonably could have obtained possession of the truck any time after the completion of moving the axle on or about August 8, 1968, by paying $477.22 to C.I.T.E. [Central] thereby limiting further damage, you must limit the Plaintiff's damages against Alderman to those which Plaintiff had suffered before August 8, 1968, if any."

The matter of conpensatory damages, and the measure thereof is fully and fairly covered by other instructions given by the court and the Alderman Instruction #5 while perhaps more detailed than the other generalized damage instructions is not so indispensable to the defendant's theory of defense as to cause reversal here.

## LIMITED EQUITY IN VEHICLE DOES NOT PRECLUDE BAILEY FROM RECOVERY OF ALL DAMAGES

Defendant Alderman cannot escape liability to Bailey for all damages occasioned by its acts or breach upon the premise that Bailey held only a limited equity in the truck and that legal title was subject to a lienhold interest in the financing agent, the bank. See *N.Y. Chicago & St. L. RY.* v. *Auer* (1886), 106 Ind. 219, 6 N.E. 330.

The law is quite clear in Indiana that when, as here a defendant is liable for damages, he is liable for all damages. It is not the concern of the defendant that the plaintiff may be obligated by reason of a related transaction to a third party nor is it the wrongdoer's concern who ultimately receives the proceeds of the judgment against the defendant. *Mullins* v. *Bolinger* (1944), 115 Ind. App. 167, 55 N.E.2d 381.[4]

## IMPLIED WARRANTY NOT NECESSARILY EXCLUDED BY EXPRESS DISCLAIMER

Appellant presents related argument upon several points which we consider together. Alderman first objects to a final instruction given by the court concerning an implied warranty of fitness, in the light of an express disclaimer of all warranties other than an express warranty set forth in the written contract of sale. Somewhat related, in the sense that it deals with the implied warranty concept, is Alderman's assertion that the compensatory damages awarded are far in excess of the damages, if any, to which plaintiff Bailey is entitled. Alderman argues that plaintiff's evidence proves at most, the deprivation of the possession of the truck from July 11, 1968 to September 3, 1968 during which time plaintiff suffered lost gross income in the approximate sum of

---

4. Compare *Teter* v. *Shultz* (1942), 110 Ind. App. 541, 39 N.E.2d 802 involving allowance of a credit to the seller for the unpaid balance of the purchase price still owed directly to the seller-mortgagee, in a recovery by the purchaser against the seller for breach of warranty.

$6100. Appellant with some merit argues then that any amount in excess of that $6100 is necessarily attributable to a conclusion by the jury that Alderman either breached an implied warranty of fitness or that Alderman was guilty of actionable fraud. We have heretofore disposed of the argument concerning alteration of plaintiff's theory of action and need not further discuss the "fraud" aspects of Alderman's contention. With respect to implied warranty, however, we first turn to a consideration of two instructions given by the court as follows:

"Instruction No. 5. You are instructed that an implied warranty of fitness for a particular purpose will arise if the product is purchased for a particular purpose which is known to the seller, expressly or by implication, and the buyer relies on the skill and judgment of the seller to furnish such goods. Therefore, if you find that such an implied warranty arose on behalf of the defendants or either one of them to the plaintiff and said warranty was breached, you may consider this in determining whether or not the plaintiff should receive an award of damages."

Appellant alleges that the foregoing instruction is prejudicially inconsistent with another instruction also given by the court as follows:

"Instruction No. 2. Ford Motor Company and Jerry Alderman Ford Sales, Inc., gave Plaintiff an express warranty when Plaintiff purchased the truck. This express warranty was to be serviced by Jerry Alderman Ford Sales, Inc., and it *excluded all other warranties, of any kind.* This express warranty was to repair or replace defective parts at Jerry Alderman Ford Sales Inc. or at any other authorized Ford dealer." (Emphasis supplied)

We agree that the instructions on their face appear to be inconsistent. To be sure the contract of sale did in fact contain an exclusion of any warranties express or implied other than that which was specifically set forth in the contract. This is not to say, however, that a jury must necessarily give force and effect to such exclusion or disclaimer. It is quite possible and permissible to have

found an implied warranty of fitness which took precedence over the purported exclusion. *Woodruff* v. *Clark County Farm Bureau Co-Op.* (1972), 153 Ind. App. 31, 286 N.E.2d 188. The Uniform Commercial Code, IC 1971, 26-1-2-316 (2), being Burns 1964 Ind. Ann. Stat. § 19-2-316 (2) provides in part that:

> "* * * to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.' "

The jury might well have found that the purported exclusion or disclaimer was not sufficiently conspicuous so as to meet the requirements of the Uniform Commercial Code provision above quoted in that it was located at the extreme bottom of the reverse or second page of the contract, which page did not require nor contemplate a signature by the purchaser. See *Rehurek* v. *Chrysler Credit Corp.* (1972), Fla. App., 262 So. 2d 452. It was, therefore, not inappropriate for the jury to have found the existence of an implied warranty of fitness not excluded by the written contract executed by the parties.

## MEASURE OF DAMAGES FOR BREACH OF WARRANTY

The merit of Bailey's position in defense of the amount awarded as compensatory damages necessarily encroaches upon a usual and traditional (if not accurate) statement concerning the measure of damages in such cases.

The measure of damages for breach of warranty has been stated as a deceptively simple proposition. It is said in general that the measure is the difference in value between what the property is worth and what it would have been worth had it been as warranted. 46 *Am. Jur. Sales* § 737. In Indiana, however, as in other states which have adopted the Uniform Commercial Code such

measure is not exclusive, for as provided in IC 1971, 26-1-2-714 and 715:

Sec. 714:

"* * *

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. "(3) In a proper case any incidental and consequential damages under the next section may also be recovered."

Sec. 715:

"(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

"(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property proximately resulting from any breach of warranty."

Such consequential damages are recoverable if they are the direct, immediate and probable result of the breach. See *Drilling & Service, Inc.* v. *Cata Enterprises, Inc.* (1963), 134 Ind. App. 668, 191 N.E.2d 114, decided when statutory provision for special damages differed only in degree of definiteness from the U.C.C. provisions above quoted.[5]

5. Prior law as contained in Ind. Ann. Stat. §§ 58-507(6) and (7) and 58-508 (Burns 1961) was as follows:
58-507 "(6) The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty. (7) In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty." [cont.]

The issues of the forseeability and the proximateness of consequential damages sustained by a plaintiff as a result of a breach of implied warranty are for determination by the jury. *City of Indianapolis* v. *Bates* (1965), 137 Ind. App. 227, 205 N.E.2d 839. In this respect, therefore, we are reluctant to interfere here with the jury's assessment of the evidence before them and such reluctance is not without venerable support. In *Page* v. *Ford* (1859), 12 Ind. 46, the question of remoteness of damage was treated extensively and the court cited with approval, a New York case which we consider worthy of note. The Indiana court stated:

> "So, *in Dewint* v. *Wiltsie,* 9 Wend. 325, the plaintiff was the owner of a ferry, at which was a tavern stand which he also owned. He leased the ferry, the lessee covenanting to keep it in good order, which he failed to do, but discontinued it and removed it to his own wharf, in consequence of which the tavern was injured in its business, so that, although the plaintiff had formerly let it at 300 dollars, he could not let it at all. Upon a suit on the covenant in the ferry lease, it was held that the plaintiff was entitled to recover his actual damage in the loss of rent, as the natural consequence of the breach of the covenant." 12 Ind. 46, 50. *Compare Lane* v. *Whitehouse* (1874), 46 Ind. 389; *Cline* v. *Myers* (1878), 64 Ind. 304.

We do not mean to imply at this juncture that merely because precedent is old that it is controlling, or even that it is correct. We cite the *Page* case and the reference to the New York case only to indicate that remoteness is relative and that whether a particular damaging consequence is forseeable and direct is for the most part a question of fact for resolution by the jury.

There are virtually as many tests and rules for measuring damages as there are varying facts and cases reported upon the subject See for comparison purposes *Smith* v. *Glesing*

58-508 "* * * Nothing in this act shall affect the right of the buyer or the seller to recover interest or special damages in any case where by law interest or special damages may be recoverable, or to recover money paid where the consideration for the payment of it has failed."

(1969), 145 Ind. App. 11, 248 N.E.2d 366; *N. Y. Central R. R.* v. *Churchill* (1966), 140 Ind. App. 426, 218 N.E.2d 372; *Weddle* v. *I. R. C. & D. Warehouse Corp.* (1949), 119 Ind. App. 354, 85 N.E.2d 501; *Schaefer* v. *Fiedler* (1945), 116 Ind. App. 226, 63 N.E.2d 310; *Moorman Manufacturing Co.* v. *Barker* (1942), 110 Ind. App. 648, 40 N.E.2d 348; *Weismann Motor Sales, Inc.* v. *Allen* (1939), 106 Ind. App. 284, 19 N.E.2d 505; *West Virginia Coal & Coke Corp.* v. *Kokomo Sanitary Pottery Corp.* (1939), 106 Ind. App. 637, 21 N.E.2d 442; *N. Y. Central R. R.* v. *Reidenbach* (1919), 71 Ind. App. 390, 125 N.E. 55; *Stiefel* v. *Witherspoon* (1919), 71 Ind. App. 192, 124 N.E. 507; *J. P. Smith Shoe Co.* v. *Curme-Feltman Shoe Co.* (1918), 71 Ind. App. 401, 118 N.E. 360; *Connersville Wagon Co.* v. *McFarlan Carriage Co.* (1905), 166 Ind. 123, 76 N.E. 294; *Berkey & Gay Furniture Co.* v. *Hascall* (1890), 123 Ind. 502, 24 N.E. 336; *Fairfield* v. *Jeffreys* (1879), 68 Ind. 578; *Cline* v. *Myers, supra; Tritlipo* v. *Lacy* (1876), 55 Ind. 287; *Lane* v. *Whitehouse* (1874), 46 Ind. 389; *Page* v. *Ford, supra;* see also Note, 31 Ind. L. J. 136 *Damages; Limitations on Recovery of Lost Profits in Indiana* and 65 Yale L. J. 992, *Lost Profits as Contract Damages.*

With respect to the conpensatory damages properly awardable to plaintiff here the issue, as tried and as preserved upon appeal before this court, approaches but does not cross the threshold of the quagmire which exists in Indiana law. This court, however, by reason of those issues which are fairly presented before it, has necessarily engaged in extensive research concerning the measure of damages recognized under Indiana Law in situations related to that which is before us and in other jurisdictons which have reported decisions involving the U.C.C. provisions hereinbefore set forth. That research has convinced this court as above noted that there is no single clear principle of law which may be applied.

We do not rest our conclusion with respect to the measure of damages solely upon Indiana case law which ante-dates the Uniform Commercial Code provision earlier set forth. We

are convinced by the rationale upholding damages for loss of profits in cases construing and applying Sections 714 and 715 of the Code, such as *Adams* v. *J. I. Case Co.* (1970), 125 Ill. App. 388, 261 N.E.2d 1; *Ford Motor Co.* v. *Taylor* (1969), Tenn. App., 446 S.W.2d 521; *Neville Chemical Co. v. Union Carbide Corp.* (1968 W. D. Pa.), 294 F. Supp. 649; *Steele* v. *J. I. Case Co.* (1966), 197 Kan. 554, 419 P.2d 902.

If this court were to indulge in a judicial purgative, it would, and perhaps should, wipe from the slate all of the decisional law existent concerning the matter of "measure of damages" as it respects "loss of use," "loss of profits," "difference in market value," etc. and enunciate a definable and ascertainable measure of damages. However, we do not feel invested with the prerogative to do so.

Suffice it to say, any measure of damages must be flexible enough to vary with the necessities of the situation. *General Outdoor Advertising* v. *LaSalle Realty Corp., supra,* and as eloquently stated in *Dennis* v. *Ford Motor Co.* (W. D. Pa. 1971), 332 F. Supp. 901, 905:

> "The general principle which should govern the matter is quite clear. Damages are supposed to compensate the injured person in full for the wrong which has been done him. If his loss is greater than the market value of the chattel at the time of its destruction, an owner should, on principle, be allowed additional items which will adequately compensate him unless some of those claimed items are so speculative as to create danger of injustice to the defendant."

22 *Am. Jur.* 2d *Damages* § 152 notes that when, as here, the owner is deprived the use of property for a period of time, to award the owner only the decrease in market value occasioned by destruction of that property is to fail to recognize that the use has been lost during the time needed to repair (if not totally destroyed) or replace (if it is rendered worthless). Thus to restrict the measure of damages to a difference in market value is to ignore that the right to use property is perhaps the most important in-

cident of its ownership. The question then turns upon whether to allow total value for destruction of property *together with* damages for loss of use during a period prior to the commencement of the time during which plaintiff could reasonably be expected to replace the property. During the time defendant wrongfully withholds the property, ostensibly for purposes of repair, plaintiff is denied the use thereof and is not obligated to replace or seek to replace the equipment for the simple reason that he is not aware that he will not have his property restored to him in 100% functional order. When, however, it should appear or is made known to plaintiff that the property is worthless (subject to a reasonable period for replacement) then and only then does his right to loss of use cease.

We do not, as implied by the text at 22 *Am. Jur. Damages* § 154, citing *Oceana Oil Producers, Inc.* v. *Portland Silo Co.* (1951), 229 Ind. 656, 100 N.E.2d 895, at footnote 16, deem the law of Indiana to preclude loss of profit as a measure of damages when property is destroyed. See *Moorman Manufacturing Co.* v. *Barker, supra.* In other words, such loss of use is not necessarily measured by the fair rental value. See *Smith* v. *Glesing, supra.*

## EVIDENCE INSUFFICIENT TO SUSTAIN COMPENSATORY DAMAGES IN AMOUNT AWARDED

Alderman claims that the award of compensatory damages in the sum of $35,000 was excessive in the light of evidence that the maximum extent of lost gross income to plaintiff by reason of defendant's wrongful detention of the truck was $6100 during the period of such detention.

On the other hand, Bailey defends the $35,000 compensatory award upon the premise that not only did she lose approximately $650.00 per week gross income during the July-September period when defendant Alderman wrongfully withheld possession of the truck, but that ultimately the loss of this income put the plaintiff-appellee so far behind in her payments that the truck was repossessed and she was sued for the

deficiency. The parties are not persuasive in their respective contentions and arguments.[6]

As above noted, that portion of the compensatory verdict of $35,000 represented by the purchase price of the vehicle, i.e., $24,350, is not excessive as a matter of law but only because the jury, as we have held, could have reasonably found a breach of warranty and that the vehicle was totally worthless for the purpose purchased. We thus turn to a consideration of the evidence of record relative to plaintiff's loss of use or lost profit with respect to the vehicle in question, insofar as that evidence might sustain the portion of the compensatory award, i.e., $10,650, not attributible to the purchase price of the truck.

22 *Am. Jur. Damages* § 172 notes:

> "* * * it must be borne in mind that prospective profits are to some extent uncertain and problematical, and so, on that account or on account of the difficulties in the way of proof, a person complaining of breach of contract is not deprived of all remedy; uncertainty merely as to the amount of profits that would have been made does not prevent a recovery." *Compare Connersville Wagon Co.* v. *McFarlan Carriage Co., supra.*

Thus, less certainty is required to prove amount of loss than is required to prove the fact that profits were in truth lost. *Reed* v. *Williams* (1969), 247 Ark. 314, 445 S.W.2d 90. Evidence of profits is not open to the objection of uncertainty where there is testimony which, while not sufficient to put the amount beyond doubt, is sufficient to enable the jury to make a fair and reasonable finding with respect thereto. *Anvil Min. Co.* v. *Humble* (1894), 153 U.S. 540, 38 L. Ed. 814, 14 S. Ct. 876.

---

6. Even a proper award of lost profit in instances in which property has been damaged or destroyed should be confined to a loss of net profit. Gross income is an improper measure. Plaintiff should not receive a windfall in the form of that portion of lost gross income representing expenses of operation saved by defendant's breach. See *A. T. Klemens & Son* v. *Reber Plumbing & Heating Co.* (1961), 139 Mont. 115, 360 P. 2d 1005.

By reason of the particular nature of the vehicle purchased here, it can be fairly stated that loss of hauling profits, should the truck fail to perform, were within the contemplation of the parties. The requirements for "certainty of loss" were thus met. *Adams* v. *J. I. Case Co.*, *supra*. Contra *Keystone Diesel Engine Co.* v. *Irwin* (1963), 411 Pa. 222, 191 A. 2d 376 but see critical commentary 9 Villanova L. Rev. 145.

In keeping with our foregoing treatment with respect to the measure of damages, the jury was correctly instructed that plaintiff Bailey, if entitled to recover, was entitled to recover for "all of the natural, direct or proximate" consequences of defendant's acts or omissions. Even, however, when the category of damage or injury, *e.g.*, loss of profit, is not remote, any sum awarded to compensate for such loss must be sustained by evidence of record. This is true even acknowledging that in many cases compensatory damages are not susceptible to absolute mathmatical computation. See *Allison* v. *Boles* (1967), 141 Ind. App. 592, 230 N.E.2d 784. The trier of fact may not be permitted to indulge in speculation in fixing the amount to be awarded.

As stated in *American Fletcher National Bank* v. *Flick* (1969), 146 Ind. App. 122, 252 N.E.2d 839, 847:

> "When it is found that a harm has been caused and the only uncertainty is as to the dollar value of the harm, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever [citations omitted]. *However, there must be some evidence on which to base an award of substantial damages.*" (Emphasis partially supplied).

In connection with our holding [to the effect that it was not wrong as a matter of law for the jury to allow full purchase price of the truck], we must address ourselves to that portion of the compensatory verdict in excess of the value of the truck. The purchase price of the vehicle was established as $24,350.00. The compensatory award thus exceeds this amount by $10,650.00.

As we view the law as to loss of use, plaintiff here is restricted to her compensatory recovery against Alderman to the loss of profit sustained during the period Alderman withheld possession of the vehicle from her, together with any subsequent loss occasioned by the fact that the truck would not perform according to the implied warranty of fitness for a particular purpose. As stated in the *Rehurek* case:

> "We do not anticipate that we are placing an undue burden upon the automobile industry in requiring them to shoulder the responsibility of making sure their products perform as they have been represented."

The evidence concerning loss of use indicates a gross loss of $6100 during the July 11-September 3 period during which Bailey was reprived of possession. This translates by the testimony to a net loss of approximately $400.00 per week. The period (8 weeks) thus garners a loss of net profit of $3200.00. Such net profit approximation is sufficient, though perhaps minimally so, to support a compensatory award of $3200 in addition to the amount representing the vehicle's purchase price. *Allison* v. *Boles, supra.* It will however not support more.

Such evidence is not of itself sufficient or definite enough to support the entire portion of the compensatory verdict in excess of $24,350. At most, such evidence justifies damages for lost profit in the sum of $3200. In this connection, it is to be noted that plaintiff did not introduce evidence of executed hauling contracts calling for ascertainable future profit nor evidence concerning the certainty, duration or consideration payable with respect to any existing or contemplated hauling contracts. It would be wholly improper for a jury to project a past approximate weekly net profit into the future for an indefinite time and without evidence that such projection was at least reasonably certain. *Weddle* v. *I. R. C. & D. Warehouse Corp., supra; Schaefer* v. *Fiedler, supra; Moorman Manufacturing Co.* v. *Barker, supra; West Virginia Coal & Coke Corp.* v. *Kokomo*

*Sanitary Pottery Corp., supra; Weismann Motor Sales, Inc.
v. Allen, supra; Street v. Chapman* (1867), 29 Ind. 142.

A different result is not warranted under the Uniform Commercial Code provisions for in quoting from 2 *Anderson, The Uniform Commercial Code* (1971), § 2-715:8, p. 470, a Pennsylvania federal court stated:

> ". . . damages which are wholly speculative in amount and incapable of reasonable ascertainment are not allowed." *Carpel* v. *Saget Studios, Inc.* (E. D. Pa. 1971), 326 F. Supp. 1331.

Somewhat more closely allied to the facts before us is *Ford Motor Co.* v. *Taylor, supra,* in which the Tennessee Court of Appeals reduced the amount of the judgment so as to be "more in accord with the evidence in the record . . . [but which] . . . should reasonably preclude any injustice to plaintiff." 446 S.W.2d 521, 530-531.

## REFUSAL OF TENDERED INSTRUCTIONS NOT ERROR

Our foregoing treatment concerning the matter of compensatory damages and the proper measure thereof, and the purported contractual exclusion of all warranties except the specific warranty limited to repairs or replacement of parts is dispositive of Alderman's additional specification of error with respect to the court's refusal of defendant-appellant's tendered Instructions #3 and #6, which read as follows:

### "INSTRUCTION NO. 3

If you find that Jerry Alderman Ford Sales, Inc., breached this express warranty to replace or repair a defective part or parts, then you must determine the amount of damages, if any, the Plaintiff sustained as a result thereof. The amount of such damages which Plaintiff may recover against Jerry Alderman Ford Sales is limited to the cost of repairs which Plaintiff paid to get the work done. Plaintiff may not recover any alleged loss of profits or other consequential damages from Defendant Jerry Alderman Ford Sales, Inc."

"INSTRUCTION NO. 6

If you find that Jerry Alderman Ford Sales, Inc., breached the express warranty to Plaintiff, you may not consider any of Plaintiff's alleged lost profits as damages unless you find that at the time Plaintiff purchased the truck, she told Alderman about the contract with Wanatah and the details of that contract and that Alderman impliedly agreed to compensate Plaintiff for lost profits on that contract, if any."

We particularly note Instruction #6 which as a tender by Alderman recognizes that a warranty theory is implicit in the litigation. As heretofore noted, Alderman's attempt to limit such possible theory of liability to actual knowledge upon the part of Alderman of the specific contract by Bailey to haul white rock and gravel and the details of that contract, must be rejected. The evidence does reflect that Alderman, through his salesman, was told of the particular purpose, i.e., hauling of white rock and gravel, for which the truck was to be used. Such imparts to the sale an implied warranty of fitness without regard to Alderman's knowledge or lack thereof concerning the specific terms of Bailey's hauling contract as to duration, compensation, frequency of hauls, etc. In short, then, the holding of this court that the element of warranty was present in the trial below is reinforced by Alderman's acknowledgement thereof as per its Instruction #6.

By reason of the foregoing, we affirm the judgment below insofar as it finds liability upon the part of defendant-appellant Alderman and insofar as it awards punitive damages of $17,500 and insofar as the compensatory damages awarded do not exceed $27,550. We, therefore, remand the cause with instructions to the trial court to modify its judgment to read as follows:

"IT IS, THEREFORE, CONSIDERED AND ADJUDGED by the Court that the plaintiff, Mary Lou Bailey, recover of the defendant, Jerry Alderman Ford Sales, Inc. only, the sums of twenty seven thousand five hundred fifty dollars ($27,550.00) on Paragraph 1 of the plaintiff's complaint, and seventeen thousand five hundred dollars ($17,-

500.00) on Paragraph II of the plaintiff's complaint for a total sum of forty-five thousand fifty dollars ($45,050.00) to be paid to said plaintiff by the defendant, Jerry Alderman Ford Sales, Inc., only, together with the plaintiff's costs in this cause laid out and expended.

IT IS ALSO CONSIDERED AND ADJUDGED by the Court that the defendant, Central Indiana Truck Equipment Corporation, recover of the defendant, Jerry Alderman Ford Sales, Inc., only, the sum of four hundred seventy seven dollars and seventy-two cents ($477.72) on the cross complaint filed against the defendant, Jerry Alderman Ford Sales, Inc., together with its costs in this cause laid out and expended.";

or in the alternative (in the event plaintiff Bailey does not consent to remittitur as herein directed) to grant appellant Alderman a new trial upon all issues.

Buchanan, P.J., concurs; Lowdermilk, J., concurs (participating by designation).

NOTE.—Reported at 291 N.E.2d 92.

ON PETITION FOR REHEARING

SULLIVAN, J.—Appellant Alderman's Petition for Rehearing asserts ten separate specifications of error in the decision and opinion heretofore issued December 27, 1972. See *Alderman* v. *Bailey* (1972), 154 Ind. App. 632, 291 N.E.2d 92. We deem two of the specifications worthy of comment in this opinion on rehearing.

Appellant Alderman first claims that:

"The Court erred in affirming the judgment for punitive damages and in holding that appellee's (Mrs. Bailey's) evidence of 'malice or oppressive conduct' was not precluded by her failure to plead fraud with specificity since such evidence solely involved acts relating to the original sale of the truck and was not related to the wrongful act of conduct complained of in Mrs. Bailey's amended complaint."

Implicit in Alderman's contention is the assumption that the only evidence which could prompt an award of punitive

damages was evidence with respect to the original sale of the truck and with respect to negotiations prior to that sale. Such is not the case. The plaintiff alleged that it was the refusal to redeliver the truck by defendant-Alderman after it had been brought in for repair which was malicious and oppressive. The jury was under the circumstances, entitled to so find.

It is true that evidence relative to defendant's state of mind at and prior to the sale does not directly bear upon the defendant's state of mind at the time defendant failed to return the vehicle to plaintiff, the latter time being the controlling and crucial time as fixed by the complaint with respect to the allowance of punitive damages. This is not to say however, that such evidence is inadmissible. Evidence as to defendant's state of mind at and prior to sale might well justify a reasonable inference that such malice and oppressive conduct constituted a continuous state of mind and but a single course of conduct—that the entire transaction was a single transaction culminating in the oppressive and malicious refusal of defendant to return plaintiff's truck.

Alderman secondly claims:

"The Court erred in upholding the trial court's implied warranty instruction and in holding that the jury could have refused to give force and effect to Alderman's disclaimer of implied warranties since (a) the validity of such a disclaimer is a question of law for the court to determine . . ."

The narrow question involved in this portion of the Petition for Rehearing is whether the trial court determined that Alderman's disclaimer was sufficient or insufficient to disclaim all implied warranties. This being so, it is not necessary to ascertain whether the court's determination of the "conspicuousness" of the disclaimer was a question of law or a question of fact.

In its instructions to the jury, the trial court gave an implied warranty instruction. It did not give an instruction

concerning the effectiveness of Alderman's disclaimer provision. The failure to instruct on disclaimers was proper since the effectiveness of a disclaimer is "for decision by the court" and not for decision by the jury. IC 1971, 26-1-1-201 (10), Ind. Ann. Stat. § 19-1-201 (10) (Burns 1964 Repl.). It must be and is by us assumed that because the trial court gave an implied warranty instruction it deemed the disclaimer to have been not so conspicuous as to exclude such a warranty.

The following language however from our December opinion was unfortunate and we now recognize that it could produce an erroneous procedural effect:

> "The jury might well have found that the purported exclusion or disclaimer was not sufficiently conspicuous so as to meet the requirements of the Uniform Commercial Code provision above quoted in that it was located at the extreme bottom of the reverse or second page of the contract, which page did not require nor contemplate a signature by the purchaser. See *Rehurek* v. *Chrysler Credit Corp.* (1972), Fla. App., 262 So. 2d 452. It was, therefore, not inappropriate for the jury to have found the existence of an implied warranty of fitness not excluded by the written contract executed by the parties." (Emphasis supplied) (291 N.E.2d 92, 102).

In view of the consideration given herein to the "conspicuousness" question, we now substitute the following language for the first sentence of the above-quoted passage:

> "It might well have been found by the court that the purported exclusion or disclaimer was not sufficiently conspicuous so as to meet the requirements of the Uniform Commercial Code provision above quoted in that it was located at the extreme bottom of the reverse or second page of the contract, which page did not require nor contemplate a signature by the purchaser."

Appellant Alderman's Petition for Rehearing is denied.

Buchanan, P.J., concurs; Lowdermilk, J., concurs (participating by designation).

NOTE.—Reported at 294 N.E.2d 617.