MOORMAN MANUFACTURING COMPANY ET AL. *v.* BARKER.

[No. 16,717. Filed March 23, 1942.]

*Wilson & Schmiedeskamp,* of Quincy, Illinois, *George I. White,* of Franklin, and *Claycombe & Stump,* of Indianapolis, for appellants.

*Fremont Miller,* of Franklin, for appellee.

BLESSING, J.—Action by appellee to recover damages for the alleged loss of pigs as the result of the abortion of four sows. The complaint was in one paragraph, the material allegations of which are as follows: During the year of 1937, and for a long time prior thereto, the Moorman Manufacturing Company was engaged in the manufacture, distribution, and sale of mineral feeds for hogs; that Herschel L. Akers and Carl Sanders were employed by said manufacturing company, and each of such agents recommended, sold and delivered to plaintiff certain feed for the hogs and brood sows of the plaintiff; that each of said agents represented to the plaintiff that said feed was beneficial and good for brood sows and would promote in every way their welfare and well-being; that said agents and each of them also represented to plaintiff in order to make said sale, and at the time said sale was made, that said feed was harmless and would not in any way injure said brood sows and that it would be perfectly safe to feed said feed to said brood sows in any quantities that they might want and desire to eat; that said plaintiff relied on said recommendations of the defendants, followed

their directions, and fed said feed as directed by the defendants to his brood sows without knowledge at the time that said feed contained any element that would be injurious to his said brood sows; that his brood sows, four in number, had been bred in the month of May, 1937; that each of said sows was due to farrow early in September of said year, and that previous to the sale of said feed each of said sows was in healthy condition; that the defendants delivered said feed to the plaintiff about the twenty-third day of July, 1937, and at that time informed plaintiff that said feed was perfectly safe in every particular and that there was no danger in allowing said sows to eat as much of said feed at any time as they might want; that plaintiff knew nothing about the contents or different elements that entered into the composition of the feed but relied wholly upon the recommendation of the statements of the defendants when said feed was sold and delivered to him; that pursuant to said directions he fed said feed to his brood sows about the twenty-fourth day of July, 1937, and immediately following the feeding of said material to said brood sows, said sows, within a week thereafter, each lost its pigs; that said loss of said pigs was caused and due to said feed and material recommended as aforesaid; that by reason of said feed being so recommended and being sold and delivered by defendants to this plaintiff, his said brood sows were each and all caused to lose their pigs of about forty in number; that each of said brood sows had in the previous litter of pigs averaged more than ten pigs each, and the loss to plaintiff by reason of the loss of said litters of pigs was as much or more than $120; that plaintiff was further damaged by reason of said sows losing their pigs at that time and by reason of having to be rebred as soon thereafter as was practical so

that the next litters would be farrowed ·in the month of December, and at a time when it was impossible to save all the. pigs so produced at that time, and by reason thereof plaintiff suffered further loss in the sum of $50, and that his total damages were in the sum of $200.

The complaint further averred that at all times after plaintiff received said feed from the defendants and in feeding said material to the said brood sows, he used due care and precaution in following the directions of said defendants and in every way complied with the recommendations and directions of said defendants in feeding said material to said brood sows. The complaint concludes with a prayer for damages for $200 and all other proper relief. To this complaint each of the defendants answered by general denial and by certain paragraphs of affirmative answers. The Moorman Manufacturing Company filed an answer in which it set up an independent contractor relationship between it and its codefendants, Akers and Sanders; but in as much as a master-servant relationship was admitted between the Moorman Manufacturing Company and Akers, who is equally charged with making the representations and recommendations concerning said feed hereinbefore set out, no further notice of this issue is required. The other paragraphs of affirmative answer on the part of the defendants and the affirmative replies on the part of the plaintiff have no bearing upon this appeal, because the questions here raised are all dependent upon whether plaintiff is entitled to recover under the allegations of his complaint and the proof made to sustain the same. Trial before a jury resulted in a verdict of $125 for the plaintiff, subsequent to which each of the appellants filed a separate motion for a new trial. Each of said motions was overruled

and these rulings constitute the only assignment of error. The motions for a new trial challenge the sufficiency of the evidence to sustain the verdict; that the verdict is contrary to law; that the court erred in over-ruling the separate and several motions of the appellants for a directed verdict; that the damages assessed are excessive; challenge certain instructions given, rulings on certain instructions refused, and also rulings of the court upon the admission of certain testimony.

Before considering such errors relied upon for reversal as we think require our attention, we feel it necessary to review parts of the evidence. The sale from the appellants to the appellee is not controverted. Appellee purchased two fifty-pound blocks of the mineral feed. This feed was delivered to appellee on the 23rd day of July, 1937; and on the following morning, the same being on Saturday, the appellee placed one of said blocks of mineral feed where his four brood sows, a few shoats, and a male hog had free access to this feed. The evidence discloses from the testimony of the appellee that the four sows had been bred in May and were due to farrow in September. Taking the testimony of appellee, there was sufficient evidence from which the jury could find that the four sows were with pig at the time that the mineral feed was first placed before them. Within a week, according to the direct testimony of the appellee, and on Wednesday following the Saturday when the feed was placed before said sows, all the sows were in heat and all took the boar on the same day. From the fact that said sows were in heat on said Wednesday and the further fact that they appeared gaunt at said time, the inference is drawn that the four sows aborted their pigs. No dead pigs were discovered and there was no way of determining how many pigs had been aborted. At the time

the feed was sold and at the time the same was delivered, the appellee's evidence discloses that he was instructed to let the sows have all of the feed they wanted, and that they would not eat too much of the same. The evidence on behalf of appellee also discloses that feed of the character involved, if consumed in unrestricted quantities by pregnant brood sows which were not accustomed to such feed, would cause them to abort their pigs. While the appellee testified that when the feed was sold to him it was represented to him that the sows would have more pigs, better pigs, and bigger boned pigs, there was no controversy about the truth of this representation. Appellee produced a witness in his behalf who testified that the feed purchased by appellee is a good feed and a wonderful conditioner but should be fed according to instructions.

The record is absolutely lacking in any proof that the feed was unfit for brood sows or that it contained any deleterious or poisonous ingredients. It is, therefore, apparent, that, in so far as the question of liability is concerned in this cause, the same is dependent upon the character of instructions given to appellee and whether they were followed. On the question of instructions, the evidence is conflicting. Appellants' evidence discloses that at the time of the sale and at the time of the delivery of the feed, that appellee was told to feed said feed according to the directions. This feed came in cartons with instructions in each carton, and one of the appellants testified that upon the delivery of said feed he opened the top of the carton and handed appellee the written instructions. While appellee denies receiving a copy of the instructions on the date of delivery, he admits that he took from the empty carton on Sunday morning the written instructions and took them to the house and read them. The evi-

dence appears to be without contradiction that upon Saturday afternoon, after the delivery of the feed in the morning of that day, Sanders, the appellant who had delivered the feed in the morning, was told that the brood sows were eating the feed greedily; and upon this information, he advised appellee to take the feed away from the sows. Although appellee admits this circumstance, he claims that said Sanders told him to put it back on Sunday morning, which he did, and there it remained until after appellee discovered that the sows had aborted their pigs.

The pertinent part of the written instructions delivered with the mineral feed is to the effect that pregnant sows should be started gradually whether the feed is in powder form or in block form. Except for other items to which we subsequently refer, a further recital of the evidence is not necessary.

The court of its own motion gave to the jury the following instruction:

"In order to recover in this case the plaintiff must prove by a preponderance of the evidence each of the following propositions:

"1st. That the brood sows referred to in plaintiff's complaint were with pig at the time alleged.

"2nd. That said brood sows aborted said pigs as alleged in the complaint.

"3rd. That said abortion was caused by said sows eating defendants' mineral feed as alleged in plaintiff's complaint."

Appellants take the position that this instruction is mandatory in nature and therefore erroneous in that it wholly ignores the question of contributory negligence. The appellee contends, that this is an action for a breach of an express warranty, and that the question of contributory negligence is in nowise involved. We have examined the record in an

effort to discover the theory on which the case was tried. The appellee tendered no instructions, and the court's instructions do not indicate the theory on which the lower court tried the case. If the suit is one for a breach of an express warranty, the appellee had the burden of proving a warranty and the breach thereof. The above instruction does not purport to cover this essential.

The complaint, in our judgment, is based upon the theory that the appellants recommended that the sows be allowed to eat all they wanted of the mineral; and although the appellee used due care and precaution, the loss occurred as the proximate result of the negligent verbal directions in telling the appellee how to feed the product. Proof that the sows aborted because they ate the feed fell short of establishing any liability on the part of the appellants for the loss suffered by appellee.

The action being based on negligence, and the evidence being conflicting as to what instructions were given concerning the amount of the mineral to be fed, and there being evidence that appellee put back or left the feed before the sows after he read the instructions, appellee's freedom from contributory negligence was essential to his right to recover.

This instruction being mandatory in form, it was necessary that all of the essentials to appellee's right to recover should have been included therein. *American, etc., Tin Plate Co.* v. *Bucy* (1909), 43 Ind. App. 501, 87 N. E. 1051; *Indianapolis Traction, etc., Co.* v. *Matthews* (1912), 177 Ind. 88, 97 N. E. 320. The above instruction being mandatory in form and erroneous, the error cannot be rendered harmless by giving explanatory instructions or others which state the law correctly. *Goodwine* v. *Ayres*

(1922), 78 Ind. App. 396, 136 N. E. 24; *Pawlisch* v. *Atkins* (1933), 96 Ind. App. 132, 182 N. E. 636. Such error can only be cured by the withdrawal of the instruction so given. *City of Union City* v. *Fisher* (1930), 91 Ind. App. 672, 173 N. E. 330. It is the contention of the appellee that this instruction is correct as far as it went, and appellants cannot be heard to complain unless they tendered an instruction supplying any omissions that should have been included. This contention has been decided adversely to appellee's claim. *Goodwine* v. *Ayres, supra.*

The court also gave to the jury of its own motion an instruction upon the measure of damages. This instruction is as follows:

"If you find for the plaintiff in this case, then it becomes your duty to fix and estimate the amount of damages the plaintiff is entitled to recover. And if you find for the plaintiff, then I instruct you that the amount of damages, if any, would be the value, if any, of the loss to plaintiff by reason of the loss of said litter of pigs, if any, and the loss, if any, to plaintiff because of having to breed said sows over again as soon after said loss to plaintiff, if any, as it was practical. Said damage to plaintiff, if any, not to exceed the sum of $200.00 as asked for in said complaint."

While the appellants do not attack this instruction directly, it is contended that the evidence as to any damages suffered is purely speculative and conjectural and that the damages assessed are excessive. The only evidence offered with respect to damages is that at the time of farrowing previous to July, 1937, these four sows delivered from 42 to 45 pigs; that when they farrowed in November, subsequent to the loss of the pigs in July, the four sows farrowed 38 pigs, and that the value of the pigs at the time of farrowing or while

they were still small suckling pigs was from $2.50 to $3.00 per head. The argument of appellee, in an effort to justify this evidence as a basis for computing damages, is as follows: "When each sow lost their pigs it follows necessarily that there was not less than one pig to each sow. And if they produced in excess of forty pigs on the average on all the litters they produced which is in evidence in this case, is it not a fair and reasonable inference and conclusion that said sows lost an average litter of pigs. We could not reasonably conclude that the number was less than four and it would not be reasonable to conclude that the number was more than the average number of all the litters produced." There was evidence by the appellee to the effect that a sow may deliver ten pigs at one farrowing and only two or three at a subsequent farrowing. From the testimony of the appellee and the argument of counsel, the conclusion follows that there was no basis established by the evidence upon which the jury could determine with any reasonable degree of certainty the damages suffered by appellee by reason of the sows having aborted their pigs. The correct measure of damages was the difference between the fair market value of the sows immediately before and immediately after they aborted their pigs, plus any special damages alleged and established by the evidence. The record in this case does not disclose any special damages. There was no evidence as to the carrying costs of the sows from May until they aborted in July. True, the appellee testified that out of the 38 pigs farrowed in November, 1937, he was only able to save 33 pigs, but there is nothing to show that this loss was due to weather conditions or other causes against which the appellee could not guard or that the loss of five pigs, and not to exceed seven in number, was a loss not

commonly occurring out of 38 pigs farrowed by four sows.

In matters of proof the jury is not justified in inferring from mere possibility the existence of facts. The burden was on the appellee to establish the extent of his damages with reasonable certainty. He failed to discharge this obligation.

Appellants also contend that the court erred in admitting certain testimony offered in rebuttal to appellants' evidence. Appellants produced several witnesses who testified in effect that they had used the mineral feed in question and had never had any trouble with it. This evidence was without the issues; and if the rebuttal evidence was inadmissible, it was error invited by appellants and of which they cannot now complain. *Perkins* v. *Hayward* (1890), 124 Ind. 445, 24 N. E. 1033.

Because of the errors herein pointed out, the judgment of the lower court is reversed with instructions to sustain appellants' motions for a new trial and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 40 N. E. (2d) 348.