**KERBOW v. BELL.**

No. 35519.

Supreme Court of Oklahoma.

July 14, 1953.

Robert J. Bell and Charles B. Tucker, McAlester, for plaintiff in error.

Fred W. Whetsel and Willard M. Gotcher, McAlester, for defendant in error.

O'NEAL, Justice.

The parties here will be referred to as they appeared in the trial court.

Eugene A. Bell, on March the 21st, 1951, was the owner of four registered hound dogs; they responded to the names of "Blue Thunder", "Blue Drive", "Blue Mose", and "Blue Sue." Blue Thunder was three years old and the other dogs were eight months old. On that day the hounds were engaged in an inordinate amount of scratching and plaintiff assumed that they were infected by parasitic mites which burrow into the skin and live in the hair follicles or sebaceous glands. In other words, the hounds had the mange. He took them to the defendant's infirmary for a medical bath. At the infirmary Bell met the defendant, Kerbow, the veterinarian, and his helper, described in the record only as "the one-arm man." The three went to a vat located upon the defendant's premises to dip the hounds. Plaintiff took up a handful of solution which he found to be "as thick as sorghum molasses." He complained of its density and thereupon defendant's helper, the one-arm man, added nine gallons of water to the solution. After the dogs were immersed, they were returned to the plaintiff's home.

Several hours thereafter the defendant, without being requested so to do, went to the plaintiff's home and observed that Blue Thunder was suffering from the effects of the solution in the dip. He turned a garden hose on the dog and washed off some of the solution, and advised plaintiff to put grease on the dog. On the following day plaintiff returned Blue Thunder to the infirmary for treatment. Blue Thunder died the following day. One pup died the same day it was dipped, and one of the other dogs died a few days thereafter. The gray pup died two weeks later. Plaintiff testified that after the hounds were dipped their skin was "just like you would pick a scalded chicken." The defendant expressed regret as to the condition of the hounds, and stated that the solution was too strong. The gray pup that died two weeks later was treated by another veterinarian in the city of McAlester. Plaintiff testified that the hounds had been run two or three times a week and were in good condition, with the exception of a slight case of mange, which he wanted cleared up.

Two additional witnesses testified that they had seen plaintiff's hounds two days before they were dipped, and that the dogs were then in good condition. The defendant testified that he was a veterinarian; that in his treatment of dogs afflicted with mites or lice, he generally used a solution consisting of three cans of lye, six pounds of sulphur and twelve bars of P & G soap dissolved in fifty-five or sixty gallons of water; that this formula produced a standard solution for this purpose.

Defendant further testified that after the dogs were dipped and plaintiff advised

him that they were sick, that he gave them calcium sulphide and borohidrate with dextrose. He concluded from observing the dogs that their condition arose from "something they ate", and not as the result of the dip. Six witnesses, owners of dogs, testified that during the month of March, they had their dogs dipped in defendant's vat for mange without any serious effects.

In rebuttal the witness, Homer Barlow, was permitted to testify that he took his shaggy long-haired hound to defendant's infirmary and had him dipped for mange; that the dog was then in good condition, other than a slight indication of mange, but that the dog died two days thereafter.

Dr. Moore, a licensed veterinarian, practicing in McAlester, Oklahoma, was called as a witness in behalf of the plaintiff. He testified that plaintiff brought a Blue Tick coon dog to his hospital in March, 1951, and upon examination he found the dog's ears and legs were scalded and he advised plaintiff to apply vaseline to the affected parts. He also testified that a solution of three cans of lye, five pounds of sulphur and six bars of P & G soap dissolved in fifty gallons of water was too strong a solution for the treatment of dogs suffering from mange; that in his practice he only used one-half can of lye; that in his judgment the solution used on plaintiff's dogs could create a toxic poison which would cause the dogs' death.

Dr. Herbert A. Wilson, a physician and surgeon, called in behalf of the defendant, testified that a solution as specified by the defendant, Dr. Kerbow, "might be very fine to dip with sometimes; (that) they might have to weaken it down—water it down— either for a young dog or an old dog; that (it) is a standard dip all right."

Upon the evidence so produced, the jury found the issues in favor of the plaintiff and returned its verdict in the sum of $300. Defendant filed his motion for a new trial, whereupon the court required plaintiff to file a remittitur of $50, which remittitur was filed, and thereupon judgment was rendered for the plaintiff in the sum of $250 from which judgment, defendant appeals.

The question to be determined is, whether the facts proven sustain the verdict and judgment rendered thereon. It is the defendant's contention that there is an absence of professional or expert testimony to sustain the verdict. We cannot agree with this contention. The defendant testified that in his professional opinion the solution would not and did not cause the death of the hounds, but that he thought they had died from something they had eaten. Moreover, we find direct evidence of several witnesses who ran the hounds two days prior to their emersion in defendant's dip who testified as to their good condition, and that after their dip they lost skin and hair and their legs and bodies were in a swollen condition. These facts are sufficient to support the jury's verdict.

In 41 Am.Jur., Physicians and Surgeons, § 88, p. 207, it is said in part:

"A person professing and undertaking to treat animals is bound to use, in performing the duties of his employment, such reasonable skill, diligence, and attention as may ordinarily be expected of careful, skilful, and trustworthy persons in his profession, and if he does not possess and exercise these qualities, he is answerable for the result of his want of skill or care."

In conformity to the general rule there announced, the trial judge so instructed the jury in Instructions Nos. 4 and 6. Defendant complains of the admission of incompetent evidence of the witness, Homer Barlow. After the defendant introduced the evidence of six witnesses who testified over plaintiff's objection that they had their dogs dipped in defendant's vat during the month of March, without any serious effects, plaintiff called the witness, Barlow, who testified over defendant's objection, that his hound dog died within two days after being dipped in defendant's vat. The error, if any, is immaterial as defendant invited it by calling six witnesses to testify on a matter collateral to the main issue here involved. The testimony of the witness Barlow was therefore in the nature of rebuttal testimony which was per-

missible under our decision in Poppy v. Duggan, 109 Okl. 104, 235 P. 165.

We affirm.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, CORN, DAVISON, WILLIAMS and BLACKBIRD, JJ., concur.