Eldon RUDEN, Appellee,

v.

L. R. HANSEN, Appellants.

No. 55322.

Supreme Court of Iowa.

April 25, 1973.

Gleysteen, Nelson, Harper, Kunze & Eidsmoe, Sioux City, for appellants and cross-appellee.

Kindig, Beebe, McCluhan & Rawlings, Sioux City, for appellee and cross-appellant.

Heard by MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and McCORMICK, JJ.

MOORE, Chief Judge.

Defendant, Dr. L. R. Hansen, appeals from judgment on jury verdict for plaintiff in his action alleging malpractice by negligent vaccination of pregnant gilts. Plaintiff cross-appeals asserting the trial court erred in determination of the measure of damages. We reverse on both appeals.

In the fall of 1966 Plymouth County farmer, Melvin Bainbridge, decided to have a farm sale, including the sale of 67 pregnant gilts and 20 pregnant sows. In November or December 1966 he asked Plymouth County veterinarian, Dr. L. R. Hansen, to do whatever was necessary to get his animals ready for sale and transportation. He told Dr. Hansen the gilts had been bred and were due to farrow by March 7, 1967. Dr. Hansen was aware transportation regulations required certain vaccinations. In December he tested the gilts for brucellosis and vaccinated them for lepto and erysipelas. He decided to wait until January to vaccinate for hog cholera so the gilts would be further along in pregnancy. He vaccinated Bainbridge's gilts and sows with a modified live cholera vaccine on January 12, 1967. He thought this was the best way to qualify them for sale. Although the label on the cholera vaccine bottle stated the vaccine should not be used on pregnant sows, he had used it successfully on pregnant animals. Dr. Hansen testified such use was the best method and within good veterinary medical practice in the community.

Plaintiff, Eldon Ruden, bought the 67 gilts at Bainbridge's farm at public auction on January 12, 1967. He knew from a newspaper ad the gilts had been vaccinated and were due to farrow about March 7. He was not aware of when the gilts had been vaccinated. Within two days after purchase plaintiff trucked the gilts to his farm near Le Mars. They appeared to be in good condition.

The gilts started farrowing about a week after March 7. Several had only one, two or three live pigs. The normal litter is from eight to ten. Some had ten or eleven mummies—little dead pigs. Others were born alive but could not walk. Some were deformed. A number of the gilts just had after-birth. Many pigs had to be killed. Eighty lived to weaning time.

As a result of his loss plaintiff brought action against Bainbridge in division one of his petition for breach of warranty and in division two a tort action against Dr. Hansen, alleging negligence and malpractice. On trial the jury returned a verdict for Bainbridge and a $2000 verdict for plaintiff against Dr. Hansen.

Bainbridge is not involved in this appeal. Defendant Hansen assigns five errors which we consider infra. No claim is asserted Ruden is not a proper party plaintiff.

I. Defendant's first assigned error is the trial court erred in failing to sustain his motions for directed verdict and for judgment notwithstanding the verdict. The thrust of defendant's argument is that plaintiff failed to introduce sufficient evidence on the standard of care required and failed to establish a jury question on the alleged negligence of defendant.

As a veterinarian defendant was duty bound to bring to his service the learning, skill and care which characterizes the profession generally. In other words, the care and diligence required was that as a careful and trustworthy veterinarian would be expected to exercise. Morrison v. Altig, 157 Iowa 265, 267, 138 N.W. 510, 511; Barney v. Pinkham, 29 Neb. 350, 45 N.W. 694; Kerbow v. Bell, Okla., 259 P.2d 317, 319, 38 A.L.R.2d 500; 41 Am.Jur. Physicians and Surgeons, § 88, page 207; Annot. 38 A.L.R.2d 503, "Veterinarian's Liability for Malpractice."

We have omitted reference to the veterinarian's duty "in the neighborhood or vicinity" as used in Morrison v. Altig, supra, first because all testimony in the case at bar refers to duty by veterinarians practic-

ing in Plymouth County and secondly because we no longer approve that limitation. The standard of care practiced in the particular community or like communities may be one of the elements to be considered but it is not conclusive. We are convinced the correct standard of the veterinarian's care should be held to that exercised generally under similar circumstances. Such is the rule as applied to hospitals in the care of patients. Kastler v. Iowa Methodist Hospital, Iowa, 193 N.W.2d 98, 101, 102; Dickinson v. Mailliard, Iowa, 175 N.W.2d 588, 596.

We return to the evidence as shown by the record. About March 15 plaintiff visited the office of Dr. John R. Conley, Le Mars, Plymouth County veterinarian and related his experience. He was given medicine to treat his sows. Dr. Conley's associate went to plaintiff's farm two days later. Dr. Conley was given a report but did not see plaintiff's animals until April 13. He drew blood for testing to eliminate two possible causes of plaintiff's problem. He was not qualified to run the brucellosis and leptospirosis test. Therefore he sent blood samples to the Diagnostic Laboratory at Iowa State University at Ames. Admission of the report of that test gives rise to one of defendant's assigned errors which we will discuss infra.

Dr. Conley's qualifications as a member of the profession are not questioned. His testimony includes:

"All right now, Doctor, based upon your experience as a veterinarian, with a reasonable degree of certainty, do you have a reason for the cause of the difficulty in the farrowing of these gilts and these gilts' litters?"

Over defendant's objection the witness answered:

"Yes. My opinion was as previously stated that the fetal deaths, of stillborn pigs, malformation in the pigs, and the high death rate in the pigs that were born alive, were the result of use of modified live vaccine, hog cholera vaccine, in the first part of their pregnancy."

He also testified he felt any violation of the contraindication enclosed with the vaccine or biological product is not proper and that use of modified live vaccine is not proper on bred animals. He further opined "the only proper procedure is serum."

■ Although Dr. Conley was not asked directly the standard of care to be exercised generally in vaccination of pregnant gilts we believe his testimony was sufficient to establish a jury question on that element of plaintiff's case.

Defendant also contends he was entitled to a directed verdict on the ground plaintiff failed to prove proximate cause. The testimony of Dr. Conley set out above sufficiently establishes a jury question on the causal connection of defendant's alleged negligence and plaintiff's loss. Dr. Conley's testimony on cross-examination, that there are other possible causes of such problems as experienced by plaintiff, was not enough to negative as a matter of law his testimony that plaintiff's problems were the result of defendant's use of modified live vaccine.

Generally questions of negligence, contributory negligence and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law. Rule 344(f)(10), Rules of Civil Procedure. The record before us does not establish such an exceptional case. The trial court did not err in overruling defendant's motions for directed verdict and for judgment notwithstanding the verdict.

II. Defendant's second assigned error is the trial court erred in allowing the witness William Mills to state his opinion as to the cause of his problem with the 20 pregnant sows which he had bought at the Bainbridge auction sale on January 12, 1967. Defendant had vaccinated the sows that day in the same manner as the gilts.

At farrowing Mills had a similar experience with his pigs as that of plaintiff.

After stating his experience with his sows Mills testified he operated a 240 acre farm on which he fed 500 to 600 head of hogs per year. He was then asked: "Do you know, of your own knowledge—and answer yes or no—what the problem was?" He answered, "Yes" and then was asked, "What was that problem?"

Defense counsel objected to the question "as calling for an opinion and conclusion of the witness, without proper foundation having been laid as to the qualifications of this witness to speak as to what the problem was." The objection was overruled and Mills answered, "I felt that this was not the procedure to be followed was to vaccinate with a modified live virus into a pregnant animal."

█ We have recently reviewed at length the legal principles involved regarding admission of opinion testimony in Ganrud v. Smith, Iowa, 206 N.W.2d 311 (filed March 28, 1973) and Fischer, Inc. v. Standard Brands Inc., Iowa, 204 N.W.2d 579. Repetition is unnecessary. It is not enough that a witness be *generally* qualified in a certain area; he must also be qualified to answer the particular question propounded. Tiemeyer v. McIntosh, Iowa, 176 N.W.2d 819, 824; Karr v. Samuelson, Inc., Iowa, 176 N.W.2d 204, 210. See also Jones on Evidence (6th ed.) § 14:2, page 583.

█ Mills' qualifications, if any, were indeed general. He said nothing concerning the length of time he had been feeding hogs, nor of any prior experience with the problem he experienced with his 20 sows. The showing of any knowledge of the proper method of vaccinating gilts or sows was entirely lacking. The inadequacy of Mills' qualifications is so manifest that no extended discussion is necessary.

The trial court committed reversible error in permitting Mills to express the opinion above set out.

█ III. Over defendant's objection that it was hearsay the trial court allowed Dr. Conley to testify as to results of the test conducted by the Diagnostic Laboratory at Ames. We agree with defendant's claim this was error.

█ Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. State v. Smith, Iowa, 195 N.W.2d 673, 675; State v. Grady, Iowa, 183 N.W.2d 707, 712; Crane v. Cedar Rapids and Iowa City Railway Co., Iowa, 160 N.W.2d 838, 845, affirmed 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176; Daniels v. Bloomquist, 258 Iowa 301, 312, 138 N.W.2d 868, 875.

As we read the record Dr. Conley's testimony the blood test laboratory report was negative was offered to disprove one of the possible causes of plaintiff's loss.

█ IV. Defendant's fourth assigned error is that Dr. Conley over defendant's objection that the factual background was insufficient, was allowed to express an opinion of the cause of plaintiff's loss. We do not agree. Although Dr. Conley did not see plaintiff's animals until April 13, he had a full history of the animals, including the breeding and vaccination dates. Dr. Hansen's deposition was part of the record and its contents, including several admissions, were within Dr. Conley's knowledge. His associate's reports were within his knowledge. We note this evidence was not challenged as being hearsay. Dr. Conley had taken blood samples and made some tests. As we point out in Ganrud v. Smith, supra, and Fischer, Inc. v. Standard Brands, Inc., supra, the trial court is vested with discretion on the question of admissibility or exclusion of expert testimony. See also Hedges v. Conder, Iowa, 166 N.W.2d 844, 857, 858. We find no abuse of the trial court's discretion.

█ V. Finally defendant asserts the trial court erred in allowing Dr. Conley to testify to "the best method" to be used in

vaccinating pregnant gilts for hog cholera. He argues this was an improper statement of the degree of care required to be exercised by Dr. Hansen. Dr. Conley's testimony was in response to defendant's testimony that use of modified live virus was the best method for vaccination of plaintiff's animals. We find no merit in defendant's last assigned error.

On defendant-appellant's appeal we find reversible error requiring remand of this case for a new trial.

VI. Plaintiff on cross-appeal asserts the trial court erred in sustaining defendant's objections to plaintiff's offer to prove alleged special damages incurred in (1) feeding the gilts from the time of purchase to farrowing, (2) the extra cost of feeding the pigs which lived and (3) loss of anticipated profits on pigs.

■■■ Plaintiff pleaded and submitted evidence on the basis his primary loss was the difference between the reasonable market value of the bred gilts immediately before and after defendant's alleged tortious act on January 12, 1967. Defendant did not at trial and does not here contest this as being the proper measure of damages to be applied. It is the general rule, but subject to proof also of special items of damages. W & W Livestock Enterprises, Inc. v. Dennler, Iowa, 179 N.W.2d 484, 488 489; Turner v. Kunde, 256 Iowa 835, 842, 128 N.W.2d 196, 200; Moorman Mfg. Co. v. Barker, 110 Ind.App. 648, 40 N.E.2d 348, 352; 4 Am.Jur.2d, Animals, § 146; 3 C.J. S. Animals § 234; Annot., 79 A.L.R.2d 677.

The record discloses plaintiff paid Bainbridge $80 per head for bred gilts. As butchers their reasonable market value was shown to be $50 to $55 per head. In fact two appeared as open (unbred) a few days after the sale and Bainbridge remitted to plaintiff $25 for each.

Plaintiff did not learn of defendant's alleged tortious act until the animals farrowed about the middle of March. He had fed the gilts during this period and maintained their weight of 300 to 350 pounds. Shortly after farrowing the gilts were bred again and delivered normal healthy litters of pigs thereafter. Four subsequent breedings resulted in normal deliveries and average litters.

■■■ Plaintiff asserts his expense of feeding the gilts from the date of purchase until farrowing was a complete waste and a special item of damage to him. We agree. The trial court erred in denying his proper offer of proof thereof.

In W & W Livestock Enterprises, Inc. v. Dennler, supra, Iowa, 179 N.W.2d 484, 486, we say:

"We have consistently held that special items, such as feed fed to livestock that die and excess feed fed to diseased livestock that is therefore marketed late, is proper. Turner v. Kunde, supra, 256 Iowa 835, 842, 128 N.W.2d 196, 200; Breitenkamp v. Community Cooperative Association, 253 Iowa 839, 844, 845, 114 N.W.2d 323, 326; Jaeger v. Hackert, 241 Iowa 379, 391, 41 N.W.2d 42, 49. * * *."

In Moorman Mfg. Co. v. Barker, supra, 110 Ind.App. 648, 40 N.E.2d 348, 352, where plaintiff's sows aborted after eating feed sold by defendant, the court said:

" * * *. The correct measure of damages was the difference between the fair market value of the sows immediately before and immediately after they aborted their pigs, plus any special damages alleged and established by the evidence. * * *."

See also 79 A.L.R.2d, section 7, pages 716, 717.

VII. Plaintiff's second assigned error asserts he should have been allowed to introduce evidence of extra cost of feeding the 80 pigs which lived. He claims they were not healthy, normal pigs and therefore required feed over a longer period

than normal to prepare them for market. His third assignment is he should have been allowed to introduce evidence of loss of anticipated profits on pigs he expected to raise from the gilts. We consider these two assignments together.

Defendant's alleged tortious act on January 12, 1967 was to the gilts. We have already pointed out plaintiff's measure of damages therefor. The undeveloped unborn pigs had no value apart from the gilts. Texas Pipe Line Co. v. Sheffield, Tex.Civ.App., 99 S.W.2d 684, 685 (allowance for unborn calves would permit double damages); Baker v. Mims, Tex.Civ. App., 14 Tex.Civ.App. 413, 37 S.W. 190, 191: ("The unborn colts could not, in the nature of things, have had a market value, apart from the mares carrying them, and the reduction of the market value of the mares by the premature loss of the colts constituted the amount of damages."); Moorman Mfg. Co. v. Barker, supra, 110 Ind.App. 648, 40 N.E.2d 348, 351 (it was error to instruct that the damages were the value of the litters of pigs aborted by four sows.); Annot., 79 A.L.R.2d 677, section 11 page 723.

We believe the trial court was right in rejecting plaintiff's offer to prove loss for alleged extra pig feed as such an allowance would result in double recovery.

Without some independent property right in the unborn pigs as such plaintiff's claim for loss of anticipated profits would not be proper. It must be noted also such anticipated profit loss could not be ascertained without resort to speculation and surmise. Therefore the trial court correctly refused plaintiff's offer of proof. Vojak v. Jensen, Iowa, 161 N.W.2d 100, 106, and citations; 22 Am.Jur.2d, Damages, section 172.

Plaintiff's second and third assigned errors are found to be untenable.

Our holding in division VI requires reversal on plaintiff's cross-appeal and a remand for new trial.

Costs of this appeal are taxed equally against the parties hereto.

This case is reversed on each appeal and remanded for a new trial.