SHINRONE, INC., and Francis G. Bridge, Appellees,

v.

TASCO, INC., Appellant.

No. 61974.

Supreme Court of Iowa.

Sept. 19, 1979.

Francis Fitzgibbons and Harold W. White, of Fitzgibbons Brothers, Estherville, for appellant.

Thomas L. McCullough of McCullough Law Firm, P. C., Sac City, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, REES, HARRIS and ALLBEE, JJ.

HARRIS, Justice.

In this law action, tried to the court, $206,877.22 was awarded for consequential damages in the sale of two calf confinement buildings. On defendant's appeal we affirm the trial court.

Tasco, Inc., is an Iowa company which manufacturers, distributes, and assembles livestock confinement buildings. Shinrone, Inc., owns land in Nebraska and Iowa which it farms and on which it raises cattle. As a part of its business Shinrone operates cow-calf operations, in which it raises Simmental and Maine-Anjou breeding stock, described by the trial court as "purebred, exotic animals."

As a result of prior purchases of swine confinement buildings from Tasco, Shinrone purchased calf nurseries from Tasco in 1973, one for the operation in each state. These buildings were purchased to house sick calves, orphan calves, and otherwise normal calves which were not achieving full growth potential. This intended use was made known to Tasco prior to purchase. Shinrone first began using a Tasco building at its Nebraska location. The use of the Tasco building at the Iowa farm began several weeks later, approximately May 1, 1974. By this time Shinrone had already stopped using the building at the Nebraska farm. The use of the building at the Iowa farm continued for several weeks, until temporarily suspended due to an almost 100 percent loss of calves placed in the building due to pneumonia. Tasco then sent experts to advise Shinrone on how to cure the problem. After following the experts' recommendations the building was reopened but, after several weeks, was again closed because of continuing losses.

Taking the evidence in the light most consistent with the verdict, poor ventilation in the buildings caused dampness which in turn caused calves confined there to catch pneumonia. The pneumonia resulted in the deaths of 379 calves.

The parties agree that the calf confinement buildings are "goods" within the

meaning of the uniform commercial code. Under section 554.2105(1), The Code 1977, " '[g]oods' means all things . . . which are movable at the time of identification to the contract for sale . . . ." This could have been no later than when the buildings were shipped to the site. *See* § 554.2501(1)(b). *See generally Bonebrake v. Cox*, 499 F.2d 951, 957–58 (8th Cir. 1974).

■ I. Tasco asserts the trial court erred in denying its motion for directed verdict. The claim is that Shinrone failed to prove a defect of Tasco's building was a proximate cause of the losses.

Controlling principles have become so familiar and well established as to be listed in the appellate rules:

> In considering the propriety of a motion for directed verdict the court views the evidence in the light most favorable to the party against whom the motion was made.

Iowa R.App.P. 14(f)(2).

> Generally questions of negligence, contributory negligence and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law.

Iowa R.App.P. 14(f)(10).

> Even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them a jury question is engendered.

Iowa R.App.P. 14(f)(17).

Notwithstanding these principles Tasco argues that the testimony of Shinrone's expert, Dr. Craig Schwartz, coupled with the nonexpert testimony, was insufficient to establish proximate cause. Tasco relies on *Winter v. Honeggers' & Co., Inc.*, 215 N.W.2d 316, 323 (Iowa 1974), where we said:

> This court has announced that expert testimony indicating that it is possible a given factual circumstance was the cause of plaintiff's injury or "could have caused it" is insufficient, standing alone, to generate a fact question. Expert testimony indicating probability or likelihood of a causal connection is necessary for this

purpose. However, when testimony of an expert witness that a described condition is merely "possible" or "might" exist as a consequence of a stated cause is coupled with other testimony, nonexpert in nature, that the described condition of which complaint is made did not exist before occurrence of those facts alleged to be the cause thereof, a fact question as to causal relation is generated. [Authorities.]

*See Duke v. Clark*, 267 N.W.2d 63, 66 (Iowa 1978); *Oak Leaf Country Club, Inc. v. Wilson*, 257 N.W.2d 739, 747 (Iowa 1977); *Becker v. D & E Distributing Co.*, 247 N.W.2d 727, 730 (Iowa 1976).

We think there was ample support in the record for the trial court's finding that Dr. Schwartz felt the calf losses were probably, not merely possibly, due to the design of the nursery. The nonexpert testimony corroborated this view and showed that the condition of the calves did not exist before their exposure to the confinement building.

Defendant's first assignment is without merit.

■ II. The trial court's decision contained a finding that Shinrone rightfully revoked acceptance of the facility pursuant to section 554.2608, The Code 1977. Tasco asserts that, after such a finding, the trial court could not award consequential damages. This assertion is answered by the following provisions of the uniform commercial code:

> Where . . . the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (section 554.2612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid
>
> a. "cover" and have damages under the next section as to all the goods affected whether or not they have been identified to the contract . . . .

§ 554.2711(1).

> The buyer may recover from the seller as damages the difference between the

cost of cover and the contract price *together with any incidental or consequential damages as hereinafter defined (section 554.2715), but less expenses saved in consequence of the seller's breach.*

§ 554.2712(2) (emphasis added).

Consequential damages resulting from the seller's breach include

a. any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise . . . . .

§ 554.2715(2).

Under these provisions we find nothing inconsistent between Shinrone's revocation of acceptance and its claim for damages. *See W & W Livestock Enterprises, Inc. v. Dennler,* 179 N.W.2d 484, 490 (Iowa 1970); White and Summers, *Uniform Commercial Code,* § 8–3, p. 265 (1972). Tasco's claim that revocation barred the right to damages is without merit.

■ III. Throughout trial Tasco objected to Shinrone's evidence on the special value of the lost livestock. A portion of Tasco's motion for directed verdict was based on the same objections. Tasco contends that the proper measure of damages for loss of the cattle was their market value. Because the calves involved were too young to market as breeding stock, Tasco contends the damages awarded because of the heifer loss should have been based on the calves' value as feeder calves raised for slaughter.

Shinrone, of course, contends the trial court was correct in valuing the heifers' loss on the basis of their potential value as breeding stock, even though there was no available market for these heifers for breeding purposes. Because the bull calves were not purebred they could not be considered as breeding stock and the trial court set their value in accordance with Tasco's theory of damages. But recovery was allowed for the substantially higher value of the heifer calves as potential exotic breeding stock.

Consequential damages, resulting from a seller's breach, are defined by section 554.-2715(2)(a) as "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise . . . ."

The commentary to this section states:

3. In the absence of excuse under the section on merchant's excuse by failure of presupposed conditions, the seller is liable for consequential damages in all cases where he had reason to know of the buyer's general or particular requirements at the time of contracting. It is not necessary that there be a conscious acceptance of an insurer's liability on the seller's part, nor is his obligation for consequential damages limited to cases in which he fails to use due effort in good faith.

Particular needs of the buyer must generally be made known to the seller while general needs must rarely be made known to charge the seller with knowledge.

Any seller who does not wish to take the risk of consequential damages has available the section on contractual limitation of remedy.

Expanding the commentary is the following from White and Summers, *supra,* § 10–4 at 316–17:

Section 2–715(2) holds the defendant liable for "any loss resulting from general or particular requirements for which the seller at the time of contracting *had reason to know.* . . ." (emphasis added). In other words, "the test is one of reasonable foreseeability of probable consequences." This objective formulation is wholly consistent with the language used by Baron Alderson himself, "[The defendant is liable for such loss] as may *reasonably be supposed* to have been in the contemplation of both parties." The Baron went on to say that if the buyer communicated "special circumstances" to the seller, the loss that would ordinarily follow in such circumstances should be compensable because the parties should

reasonably have contemplated it, that is, because such loss would have been foreseeable. Similarly, under the Code, the seller is liable for consequential damages when he had reason to know of the buyer's general or particular requirements at the time of contracting, regardless of whether he consciously assumed the risk of such loss. [Footnotes omitted, emphasis in original.]

█ It is clear from the record that Tasco reasonably knew, from information gained during the course of dealings between the parties, of Shinrone's intention to house Maine-Anjou and Simmental breeding calves rather than calves marketed for slaughter. The fact that there was no available market for these heifers as breeders does not mean the trial court's damage determination was wrong. Mere difficulty in ascertaining the amount of damages does not alone constitute a cause for denial of recovery. *Oak Leaf Country Club, Inc. v. Wilson*, 257 N.W.2d at 747.

Since there was no available market for breeding heifers of this age, the trial court determined their value on the basis of breeding heifers of market age. The trial court pointed out:

The value of the female calves is based on their genetic characteristics, which exist at birth, and not their age. As both Cline and Anderson testified, the calves' genetics would give them great potential value, and a value to their owner far in excess of feedlot or slaughter value. It is extremely unlikely that the owner of such a calf would willingly sell it for slaughter or feedlot purposes. In fact, no one testified that female exotic calves are in fact regularly or normally sold for feedlot or slaughter purposes. Therefore, it is clear that there is no market, and thus no market value, for female exotic calves as feedlot or slaughter animals.

█ The trial court made extensive findings concerning the various classes of calves and the cost of raising them to the age of one year, when they could be used for breeding purposes. It reduced the award by the normal loss rate of such

calves. Hence this case is to be contrasted from *Ruden v. Hansen*, 206 N.W.2d 713, 719 (Iowa 1973). In *Ruden* we denied recovery for anticipated losses as too speculative. The damages shown in the present case are not speculative. Bearing in mind that we have determined consequential damages are allowable and that the question has shifted to measuring them, we note:

Under modern practice the . . . rule does not deny a recovery of profits because of the fact that they are profits; where recovery is denied, it is because they are speculative, contingent, conjectural, remote, or uncertain.

25 C.J.S. *Damages* § 42, at 735. We also note and approve the following:

When the profits which are sought are those arising out of the breached contract, those profits . . . are presumed to have been in the contemplation of the defaulting party at the time he entered into the contract, and are recoverable if proved with reasonable certainty.

22 Am.Jur.2d *Damages* § 174, at 246–47 (citing *Berg v. Kucharo Constr. Co.*, 237 Iowa 478, 21 N.W.2d 561 (1946)).

We find no error in the trial court's measure of damages.

█ IV. On appeal Tasco suggests that the award should have been based on replacement costs. This is a contention not raised nor suggested to the trial court. Hence, we give it no consideration. *Davidson v. Van Lengen*, 266 N.W.2d 436, 439 (Iowa 1978).

V. Shinrone's Iowa operation general manager, George Cline, was permitted to state his estimate, based on personal knowledge, "of the costs of feeding a calf, per day, while in the calf nursery." Evidence was also allowed of estimates, based on personal knowledge, of the number of calves which died in the Tasco nurseries, both in Iowa and Nebraska. This evidence was objected to on the claim it was not the best evidence. Trial court rulings admitting this testimony are the subject of a separate assignment of error.

■ It was shown that records were kept for both operations. Tasco believes that the evidence should not have been allowed because it was an attempt to establish the terms of these records by oral testimony. As stated in *Schiltz v. Cullen-Schiltz & Assoc., Inc.*, 228 N.W.2d 10, 19–20 (Iowa 1975):

> Rule of best evidence obtainable is expressly, if not solely, applicable to documentary evidence [Authority], and has no application where the fact to be proved is independent of any writing even though the fact has been reduced to a writing or is evidenced by a writing. [Authorities.]
>
> The rule excludes testimony designed to establish the terms of a document, and requires the document's production instead, but does not exclude testimony which concerns the documents without aiming to establish its terms. [Authority.]

*See Bahnsen v. Rabe*, 276 N.W.2d 413, 415 (Iowa 1979).

■ In the present case, Shinrone's counsel carefully phrased the questions so as to elicit estimates based on personal knowledge. Although these estimates tended to corroborate the information contained in Shinrone's business records, and although the records tended to corroborate the estimates, it is clear that the questions were not posed to establish the contents of the records themselves. The objections were not properly taken.

■ VI. Tasco also objected to the introduction of plaintiff's exhibit 10. This was a log kept by Dr. Craig Schwartz while he served as veterinarian at Shinrone's Iowa farm. A record was kept on each calf placed in the Tasco nursery. Before leaving Shinrone's employment, in October 1975, a secretary transcribed the handwritten log. Dr. Schwartz testified that he verified this copy when it was completed. Thereafter the handwritten log was lost and Dr. Schwartz testified he was unable to locate it.

When the typed transcription was introduced as plaintiff's exhibit 10, it was objected to as hearsay and not the best evidence.

Tasco argues that the exhibit, being secondary evidence, should not have been admitted at trial, citing *Schroedl v. McTague*, 256 Iowa 772, 129 N.W.2d 19 (1964). In *Schroedl*, the plaintiffs offered secondary evidence of original documents which they testified had been destroyed. Despite arguments that the secondary evidence should not have been admitted because plaintiffs had destroyed the originals, we held the evidence was admissible. We pointed out that there was nothing appearing in that record which would justify holding as a matter of law that the destruction of the original was " . . . so tainted with fraud that secondary evidence of the contents should be excluded. . . . " 256 Iowa at 779–80, 129 N.W.2d at 23–24.

In order to hold exhibit 10 inadmissible by reason of loss of the original documents, we would have to find (1) that the original log was intentionally destroyed, and (2) that the destruction was under circumstances indicating intentional fraud. There was no evidence of either in this record. Tasco's contention to the contrary is without merit.

■ Tasco argues that the transcript was not admissible under section 622.28, The Code 1979, which provides for the admission of business records if the judge finds they were made in the regular course of business or at or about the time of the act or event recorded and if the records' sources indicate their trustworthiness. *See, e. g., State v. Fisher*, 178 N.W.2d 380, 382 (Iowa 1970). Even if we were to distrust Dr. Schwartz's powers of comparison, the statutory allowance that a record need be made only "about the time" of its subject deserves an especially liberal application given the rather minimal possibilities of error here. The trial court did not abuse its wide discretion in applying section 622.28. *Prestype, Inc. v. Carr*, 248 N.W.2d 111, 117 (Iowa 1976).

■ VII. Records of Shinrone's Nebraska operation were received in evidence over Tasco's objection that their custodian lacked personal knowledge of their preparation. Foundation for admitting the records

was laid through the testimony of Delbert Johnson, the Nebraska operation general manager. Preparation of these records started prior to Johnson's employment and Tasco objected that he therefore did not possess sufficient personal information for a proper foundation.

This contention was answered by *Culligan Soft Water Service v. Berglund*, 259 Iowa 660, 664–65, 145 N.W.2d 604, 607 (1966). In that case we denied a similar contention. Foundation for Culligan's office records of sale was laid through the testimony of a company officer who joined the company after the sale in question.

VIII. Letters sent to Shinrone by Maine-Anjou and Simmental associations contained market price information regarding these breeds. When offered in evidence as exhibits, Tasco objected to them as "incompetent, irrelevant and immaterial, not a proper measure of damages." In another assignment of error Tasco argues the trial court erred in overruling this objection.

Precisely the same form of objection was held insufficiently specific to alert the trial court to a theory of inadmissibility in *Gilman v. McDaniels*, 177 Iowa 76, 158 N.W. 459 (1916). More recently in *Bailey v. Chicago, Burlington & Quincy Railroad*, 179 N.W.2d 560, 567 (Iowa 1970), we held the same objection was no basis for review unless the grounds for inadmissibility are obvious. In *Nepple v. Weifenbach*, 274 N.W.2d 728, 732 (Iowa 1979), we held the objection was sufficient to raise questions of relevancy and materiality.

■ Relevancy and materiality are matters of trial court discretion. *State v. Fuhrmann*, 257 N.W.2d 619, 625 (Iowa 1977); *Wiedenfeld v. Chicago & N. W. Transp. Co.*, 252 N.W.2d 691, 699 (Iowa 1977). Relevancy is defined as:

. . . [E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. [Authority.]

Basic test of relevancy is whether challenged evidence makes the desired inference more probable than it would be without evidence and this determination is a matter for exercise of the trial court's discretion.

*Carson v. Mulnix*, 263 N.W.2d 701, 706 (Iowa 1978).

■ Immateriality refers to ". . . evidence which is offered to prove a proposition not in issue . . . ." *Trushcheff v. Abell-Howe Co.*, 239 N.W.2d 116, 125 (Iowa 1976). See *Vine Street Corporation v. City of Council Bluffs*, 220 N.W.2d 860, 862 (Iowa 1974). Under these definitions there was no error in the challenged ruling.

■ Nine other exhibits were received in evidence over the sole objection that there was no proper foundation for their admission. On appeal Tasco asks a reversal on the same basis. The assignment is without merit because of lack of specificity of the objection. *State v. Welsh*, 245 N.W.2d 290, 295–96 (Iowa 1976); *Twin-State Eng. & Chem. Co. v. Iowa State Hwy. Com'n*, 197 N.W.2d 575, 581 (Iowa 1972).

IX. On direct examination as Shinrone's expert witness, Dr. Schwartz was allowed to state his conclusion that the wide-spread prevalence of pneumonia among the calves placed in the Tasco calf nursery was caused by the nursery itself. Tasco objected contending that this conclusion was unsupported in the record.

■ Reception of opinion evidence is a matter of trial court discretion. We will not reverse in the absence of manifest abuse of discretion. Nevertheless, admission of opinion evidence without a factual foundation is reversible error. *Hegtvedt v. Prybil*, 223 N.W.2d 186, 189 (Iowa 1974).

■ From our reading of this record we believe that a sparse but sufficient factual foundation was laid for stating the conclusion. Dr. Schwartz said that alternative feeding was attempted to stop the death rate. Various types of antibiotics were attempted as treatments with no improvement in the death rate. The confinement facility was described as having fairly high humidity and a continuous problem with air

flow. The witness described this as disastrous.

There was no abuse of discretion in admitting the conclusion.

X. Tasco argues the trial court erred in failing to sustain an objection of "no foundation" to testimony by George Cline relating to market value. Cline was asked:

Now, we come to the question of what an animal of the Simmental or Maine-Anjou halfbreed, and I want to know what they were selling for, and don't answer because this is where we get into the area where Mr. Fitzgibbons wants to say something. I want you to give me the information as to halfbreed, first as to male and first as to female. That is my question.

When the question was objected to, Shinrone's counsel pointed out that the question did not ask the value of the particular animals. Rather the question sought a recitation of the general market value for animals of these breeds, based on the witness's personal knowledge. The purpose of the question was to lay a foundation by showing the witness's special knowledge of the value of these breeds. This was done to enable him to testify as an expert on the value of the calves.

 A witness must be qualified to do so. *Local Bd. of Health, Boone County v. Wood*, 243 N.W.2d 862, 869–70 (Iowa 1976). Opinion evidence is inadmissible over a proper objection that there has been no proper foundation which establishes the qualifications of the expert. *Fischer, Inc. v. Standard Brands, Inc.*, 204 N.W.2d 579, 582 (Iowa 1973). It is proper to show the witness's familiarity with market values in order to qualify him to state an opinion of value. *See Cargill, Inc. v. Fickbohm*, 252 N.W.2d 739, 742 (Iowa 1977). Considerable latitude is allowed in qualifying a witness as an expert. *Duke v. Clark*, 267 N.W.2d 63, 66 (Iowa 1978). There was no error.

XI. William Pines is a contractor and former employee of Tasco who was called as a rebuttal witness by Shinrone. Tasco objected to his testimony because

Pines was not included in a list Shinrone furnished in response to a pretrial interrogatory which asked for a listing of all expert witnesses Shinrone would use at trial. Again we find no error.

It is far from clear that Pines was called as an expert. His testimony indicates he was called solely to testify of his experiences as a former employee rather than as an expert. In any event the provisions of Iowa R.Civ.P. 134(b)(2)(B) are permissive and not mandatory. The rule is clear that a court may, but is not required to, issue an order refusing to allow a disobedient party to introduce designated matters in evidence. No pretrial order prohibiting testimony by unlisted experts was sought by Tasco. Under the circumstances the trial court acted well within its discretion in allowing the testimony, even if it might be considered expert testimony.

As all of defendant's assignments are without merit, the judgment of the trial court is affirmed.

AFFIRMED.